## THE STATE v. OBUCHON, Appellant.

### Division Two, December 18, 1900.

**Embezzlement:** EVIDENCE: INSTRUCTION: CASE STATED. Defendant was convicted of embezzlement under an indictment charging him with grand larceny. The evidence was to the effect that the prosecuting witness paid defendant the sum of $80, on a promise by the latter to buy with it for him ten times that amount of genuine money, and to deliver it to him within thirty days thereafter. If the transaction between the parties was one of sale of money for money, defendant could not be convicted under the indictment. There was no evidence that defendant acted as the agent of the prosecuting witness to invest the $80 in the purchase of counterfeit money for the latter; and an instruction that if the jury so believed they should find defendant guilty of embezzlement, *held*, erroneous.

Appeal from Perry Circuit Court.—*Hon. H. C. Riley,* Judge.

REVERSED AND REMANDED.

*John V. Noell* for appellant.

(1)   On a charge of embezzlement by agent or bailee the agency or bailment must be proved.   State v. Meyers, 68 Mo. 266; State v. Dodson, 72 Mo. 283.   (2)   There was no evidence of agency or bailment in this case.   On the contrary the

prosecutor testified that he delivered $80 to the defendant under a contract that the defendant would, within thirty days, furnish him $800 genuine money therefor. The court below gave no instruction based on the theory that the money which defendant agreed to furnish was genuine money. Instruction 1 given for the State, being wholly unsupported by the evidence, should not have been given. Paddock v. Somes, 102 Mo. 226; State v. Parker, 106 Mo. 217; Wilkerson v. Eilers, 114 Mo. 245; Stone v. Hunt, 114 Mo. 66; Frantz v. Hilterbrand, 45 Mo. 121. (3) In the next place the representation or pretense that the defendant could or would furnish or obtain for the prosecutor, ten dollars in genuine money for every dollar delivered by the prosecutor to the defendant, is too absurd and irrational to deceive any sane person, and hence could not constitute a criminal false pretense under the law. State v. Cameron, 117 Mo. 641; State v. Vorback, 66 Mo. 168; State v. Evers, 49 Mo. 542; State v. Williams, 77 Mo. 310; 1 Bish. Cr. L. (7 Ed.), secs. 585, 586.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) We submit that the evidence of Leo Maddock shows clearly that he entrusted defendant with a sum of money, to be invested by defendant for him in a certain manner, to-wit: by purchasing certain money. This constituted the agency necessary to be proved. The first instruction told the jury that in order to convict of embezzlement they must find the money to have been turned over by Maddock to the defendant for the purpose of being invested by defendant for Maddock in the purchase of counterfeit money. There being evidence of an agency and the point being covered by the instructions, the verdict cannot be disturbed on the ground that there was

no agency, even if the evidence as a whole is not perfectly satisfactory on that point. It was a question for the jury, and the jury has passed upon it under proper instruction from the court. (2) The record does not support appellant in his contention that there is no evidence that the defendant received money from the prosecuting witness for the purchase of counterfeit money.

BURGESS, J.—At the adjourned October term, 1899, of the circuit court of Perry county, defendant was convicted of the crime of embezzlement, under an indictment charging him with grand larceny, and his punishment fixed at two years' imprisonment in the penitentiary. After unsuccessful motions for a new trial, and in arrest, he appeals.

It appears that on the fifteenth day of November, 1897, the defendant went to Leo S. Maddock, and asked him if Eli McDowell had been to see him, and said that he had sent McDowell to see him, because McDowell was a good friend to him and could be trusted.

Defendant then proposed to Maddock if he would pay him $80, he would buy with it for him ten times that amount of genuine money, and deliver it to him within thirty days thereafter. Maddock says that he did not want to put in the $80, and defendant said, "If you will furnish me $40, now, I will send that, and when you get the money you can pay me the other forty out of the money you get." It was finally agreed between them that Maddock should pay defendant $40 down and $40 more when the money should come.

Defendant said to Maddock, "You will get your return for this in a certain time," and that he would take his word for the other. About two weeks later defendant sent a note to Maddock by Eli McDowell in which he said, "I am in need of that money that you owe me," and a few days thereafter Mad-

State v. Obuchon.

dock paid him $5, and still later $35 more, being the balance of the $80.

Defendant testified that the only money he ever received from Leo Maddock was $35 in payment for money that he had loaned him; that he did not send or agree to send for "green goods" for Leo Maddock as stated by him, and never told him or anybody else that he could or would get them ten dollars for one, nor that he could or would get them any sum of money or "green goods," whatever.

The only one of the State's instructions that is complained of is the first, which reads as follows:

"If the jury find from the evidence in the cause beyond a reasonable doubt that at any time within three years prior to the tenth day of October, 1898, in the county of Perry and the State of Missouri, one Leo S. Maddock delivered to the defendant, John Obuchon, the sum of eighty dollars or any sum of money to the amount of thirty dollars or more of the lawful money of the United States to be used by the defendant for the purpose of being invested for the said Leo S. Maddock in the purchase of counterfeit money, or money purporting to be money printed on plates stolen from the United States government, and if the jury further find that the defendant willfully converted any money so received by him to his, the defendant's, own use, and that the said money so converted to his own use was of the lawful money of the United States, and was of the value of more than thirty dollars, and was the property of the said Leo S. Maddock, and that the said money was so converted to the defendant's own use, with the intent on the defendant's part to permanently deprive the said Leo S. Maddock of his said property without said Leo Maddock's consent or without any honest claim or belief on the defendant's part that he was lawfully entitled to said money, but for the purpose of dishonest gain, then the jury will find the defendant guilty of embez-

zlement of property of the value of more than thirty dollars, under the second count of the indictment and assess his punishment by imprisonment in the penitentiary for a period of not less than two nor more than five years."

With respect to this instruction it is insisted that there was no evidence of agency or bailment, or that defendant ever received from Maddock any sum of money for the purpose of being invested by him for said Maddock in the purchase of counterfeit money, or money purporting to be money printed on plates stolen from the United States government, and for this reason no evidence upon which to predicate the instruction.

We are not prepared to give our assent to the contention that there was not sufficient evidence tending to show that defendant became the agent of Maddock in receiving from him the money for the purpose of purchasing other money upon which to predicate the instruction.    Under the evidence the transaction was one of agency on the part of defendant for Maddock, in the contract to furnish the money, or it was a sale by defendant to him of it.    If a sale, then of course defendant could not be convicted under this indictment, but if defendant was the agent of Maddock for the purchase of genuine money, and failed to do so, but with criminal intent appropriated it to his own use, he was guilty of embezzlement. [State v. Noland, 111 Mo. 473; State v. Cunningham, 154 Mo. 161; State v. Schilb, 159 Mo. 130.]

It is also insisted that the court erred in refusing instructions numbered one and two asked by defendant.    They read as follows:

"1.    If the jury find from the evidence that the money alleged in the indictment to have been stolen, taken and carried away by the defendant was paid and delivered to him by the prosecutor, Leo S. Maddock, as the purchase price of a larger sum of money, whether counterfeit or genuine, which the de-

fendant then and there agreed to pay and deliver to the prosecutor at some future date thereafter, then and in that event the jury should acquit the defendant.

"2.   Under the law a criminal agency can not form the basis of a prosecution for embezzlement.   Therefore, although the jury may find from the evidence that the defendant obtained from the prosecutor the money charged in the indictment to have been stolen, taken and carried away, yet if they find that defendant obtained and received said money under an agreement made by him with the prosecutor that he would as agent of the prosecutor obtain counterfeit money for the prosecutor at some future time thereafter, and shall further find that defendant's said undertaking to procure counterfeit money constituted the sole and only agency existing on the part of the defendant toward the prosecutor, then and in that event the jury should acquit the defendant."

If the contract between Maddock and defendant was one of sale by defendant of genuine money to Maddock at the rate one dollar to ten to be thereafter delivered, then the first of these instructions should have been given and there was evidence to warrant it, but that such an agreement was made seems unreasonable and absurd.

There was no error in refusing the second instruction, for the same reason that the State's first was erroneous, that is, that there was no evidence upon which to bottom it.

For these considerations we reverse the judgment and remand the cause.

*Gantt, P. J.,* and *Sherwood, J.,* concur.