## THE STATE v. BROWN, Appellant.

Division Two, February 3, 1903.

1. **Embezzlement:** INDICTMENT: NECESSARY PROOF. Where an indictment for embezzlement charges as one of its essential elements that the defendant occupied the relation of "clerk, agent, collector or servant" to the person defrauded, the proof must establish that re-

lation and show that the money or goods embezzled came to defendant by virtue of that relation.

2. ————: ————: ————: OPTIONS: BUYING FOR ANOTHER: CONTRACTS: PROVINCE OF JURY AND COURT. The prosecuting witness telegraphed defendant to buy him "one thousand barrels of July pork," and sent $1,000 for that purpose, and to this defendant replied that he had "executed the order as per inclosed contract," and the inclosed contract addressed to the prosecuting witness said: "You have this day bought from us at regular commission, one thousand barrels of Chicago pork for delivery in July." The prosecuting witness accepted the contract and before July the defendant, at the prosecutor's request, closed out the deal at a profit of $1,770, but, on demand, did not turn this profit over to him, and thereupon he was indicted as an agent for embezzling the $1,000. *Held, first,* that the relation between the two men was determined by this contract; *second,* that the letter which went along with the contract did not change the contract itself, for the letter specifically announced that defendant had "executed the order to buy as per inclosed contract," and, hence, it was improper to permit the jury to say whether or not the contract was a mere form to cover up defendant's real purpose as shown by the results, since it is not the province of a jury to determine the legal effect of a contract; *third,* the evidence was insufficient to establish the relation of agency on the part of defendant, and, therefore, having been convicted of embezzlement under an indictment framed on the theory that he was an agent, he is discharged.

3. Contract in Criminal Case: INTERPRETATION: PROVINCE OF COURT. It is for the court in a criminal case to interpret writings or contracts introduced in evidence to establish any element of the offense, as much so as in civil proceedings.

4. Speculative Contract: POLICY OF THE LAW. It is not the policy of the law to punish as criminal the violation of every foolish speculative contract.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

REVERSED.

*J. A. McLane, L. C. Boyle* and *W. F. Riggs* for appellant.

(1) "On the charge of embezzlement by agent or bailee, the agency or bailment must be proved." State

v. Myers, 68 Mo. 266; State v. Dodson, 72 Mo. 283. (2) We do not dispute what constitutes the crime of embezzlement, as defined by this court in State v. Cunningham, 154 Mo. 180, and it is immaterial to what wrongful use the money or property is intended. If the servant diverts its course towards its destination, to make it his own, he embezzles it. State v. Cunningham, supra. And, we apprehend, no one will question, ''The law is, that a broker or commission merchant has no right to buy from, or sell to his principal, without his knowledge and consent.'' Connor v. Black, 119 Mo. 134. But, does this prohibit a co-partnership from buying from or selling to another, property by contract with full knowledge and consent? (3) The charge was embezzlement from Hardwick. Who paid appellant any money destined for Hardwick after the deal was closed? State v. Obuchom, 159 Mo. 256; State v. Parker, 106 Mo. 217; State v. Crosswhite, 140 Mo. 358; State v. Dodson, 72 Mo. 283; State v. Schilb, 159 Mo. 142.

*Edward C. Crow,* Attorney-General, *Herbert S. Hadley* and *Charles E. Burnham* for the State.

Hardwick was dealing as a broker, and the jury so found. The occurrences in Brown's office on April 28th prove conclusively that Brown never construed the contract to mean that he had sold and Hardwick bought from him, and not until he had the advice of able counsel was such a claim preferred. Brown was not made Hardwick's agent by ''closing the deal'' on April 28th, but he became and was Hardwick's agent the moment he received the first telegram and acted thereunder.

FOX, J.—On May 5, 1902, H. S. Hadley, prosecuting attorney of Jackson county, filed in the criminal court of Jackson county, at Kansas City, an information based upon section 1912, Revised Statutes 1899, as follows, ommitting formal parts:

''Now comes Herbert S. Hadley, prosecuting attor-

ney for the State of Missouri, in and for the body of the county of Jackson, and upon his official oath informs the court, that J. L. Brown, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on February 7, 1902, at the county of Jackson, State aforesaid, being then and there the agent, clerk, collector and servant of Eugene F. Hardwick, a private person, the said J. L. Brown (not being then and there a person under the age of sixteen years), then and there by virtue of such employment and office of agent, clerk, collector and servant, as aforesaid, did have, receive and take into his possession and under his care and control certain money to the amount of one thousand dollars, then and there lawful money of the United States, but the description of which said money is to the said prosecuting attorney unknown, and which said money was then and there of the value of one thousand dollars, and then and there was the money and personal property of the said Eugene F. Hardwick, a private person, as aforesaid, the employer of him, the said J. L. Brown, and that the said J. L. Brown the said money then and there unlawfully, feloniously, fraudulently and intentionally did embezzle and convert to his own use, without the assent of the said Eugene F. Hardwick, a private person, as aforesaid, the owner of said money, and with the unlawful, felonious and fraudulent intent then and there to deprive the owner, the said Eugene F. Hardwick, a private person, as aforesaid, of the use thereof; against the peace and dignity of the State.''

Appellant was put upon his trial, which resulted in a verdict of guilty, and his punishment assessed at imprisonment in the penitentiary for five years. Motions for new trial, and in arrest of judgment, were filed in due time, both of which were by the court overruled, and this case reaches here by appeal.

It will be observed that one of the essential elements of the offense as charged in this information, is, that defendant must occupy the relation of agent, clerk, collector or servant of Eugene F. Hardwick. In other

words, "in order to constitute embezzlement as charged in the information, the accused must occupy the designated fiduciary relation and the money must belong to his principal and come to the possession of the accused by virtue of that relation." [Griffin v. State, 4 Tex. App. 390.] The overshadowing question in this case is as to the existence of the relation of principal and agent, between the prosecuting witness Hardwick, and the defendant, J. L. Brown. If the contention of appellant is to be sustained, that the testimony shows that no such relation existed, then this controversy is at an end, and would render it absolutely unnecessary to burden this opinion with a discussion of the numerous other errors complained of.

To reach a clear understanding of this most vital question involved in this case, it will be necessary to note the testimony offered by the State to support the essential charge in the information, "that defendant was in this transaction acting as the agent of Hard-wick." It appears from the testimony that J. L. Brown & Co. were doing business in Kansas City, Missouri. On February 7, 1902, E. F. Hardwick, the prosecuting witness in this case, sent the following telegram to J. L. Brown & Co.:

"Alva, Okla., 2-7, 1902.
"J. L. Brown & Co., 554 Gibralter Bldg., K. C., Mo.:
"Buy me one thousand bbl. July pork. Will have Exchange Natl. Bank wire you the money.
"E. F. HARDWICK."

On the same day the Exchange National Bank of Alva, Oklahoma, at Mr. Hardwick's direction, wired defendant that it would pay his (defendant's) draft on E. F. Hardwick for one thousand dollars.

On the same day the defendant drew a draft on said Hardwick for one thousand dollars and attaching the telegram from the bank deposited the same to his credit in Traders' Bank of Kansas City, Missouri. This draft was duly paid February 10th by the Oklahoma

bank, out of Hardwick's account, and placed to the defendant's account in the Traders' Bank of Kansas City, Missouri.

On the 7th day of February, after deposit of said draft, etc., defendant wrote to Mr. Hardwick the following letter:

"J. L. Brown & Co. Grain, Provisions, Stocks and Bonds.   Municipal and Investment Securities.   Gibralter Building.

"Kansas City, Mo., Feb. 7, 1902.

"Mr. E. F. Hardwick, Alva, Okla.:

"Dear Sir—We have your telegram to buy 1,000 barrels Chgo. July pork and, on receipt of telegram from bank, we executed your order for same as per inclosed contract.   We thank you very much for the order, and hope that the results of same will be such as to insure further orders from you.

"Yours very truly,

"J. L. BROWN."

The contract mentioned as inclosed is as follows:

"J. L. Brown, Grain, Provisions and Stocks.   Gibralter Building."

"Kansas City, Mo., 2-7-02.

"Mr. E. F. Hardwick:

"You have this day bought from us at regular commission, less than the prices named in this memo., one thousand barrels Chicago pork, at $16.05 per bbl. for delivery in July.

"Margins deposited with us, $1,000.

"NOTICE:   All contracts made with us for the purchase or sale of grain, provisions and stocks made with us or through us are subject to the rules and regulations of the Board of Trade or Stock Exchange in the city where delivery is to be made, and we hereby agree to receive all property sold to us or through us and to deliver all property bought from us or through us at maturity of contract, and we will not accept business under any other conditions, and the trades above recorded are made with this understanding.   We also

reserve the right to close any trade made with us, or through us, without notice, if the money in our hands is, in our judgment, insufficient to protect the trade.

"Original.

"J. L. BROWN & Co.,

"Per J. L. B."

The prosecuting witness, E. F. Hardwick, further testifies that in the same letter containing the contract, was inclosed a pamphlet, indorsed, "How to Speculate in Grains."

On April 28, 1902, Hardwick appeared at the office of J. L. Brown & Co., and his testimony at that time is as follows:

"Q. Did you call on Mr. Brown? A. Yes, sir: on the 28th of April, at his office in Gibraltar Building, I introduced myself, told him I had some deals with him, and I wanted to close them up, and he said 'all right,' and he stepped to the telephone and talked. I asked him if he had closed it out, and he said he had; I asked him at what, and he said seventeen twelve; $17.12 a barrel. Come around at two o'clock and get your money. I told him I wanted my money now, it is customary. He said other concerns had an hour or two, and he ought to have that time. I told him I wanted my money right now. I told him I would stay there until he did get the money.

"Q. How much did it amount to, if it closed at $17.12? A. The full amount would amount to $3,770, including the $2,000 I paid him. The rest would be the profit on the pork. Finally he said he couldn't get the money unless he could get out, he had some friends. I told him I would be there the next day and expect the money. I never seen anything more of him until he was arrested.

"Q. I show you a book 'How to Speculate in Grain, by J. L. Brown.' Did you get that book from J. L. Brown? A. Yes, sir; or one like it. Received it through the mail, sometime between the 7th of February and the 28th of April. It was after this $1,000 order was placed.

"Q.   Did you receive any of the money you deposited with him?   A.   No, sir.

"Q.   Or any part of it?   A.   No, sir."

This testimony of Hardwick was substantially corroborated by witness Bernard Holsmark.   There is a volume of other testimony offered by the State all tending to show that the money was converted to the use of defendant, and that E. F. Hardwick was defrauded out of it in this transaction, but it is not necessary to quote it here, as it does not shed any light upon the question under immediate consideration.   It must further be observed that in order to constitute the offense as charged, the relationship of principal and agent had to exist at the time the money was paid to the defendant.   This is conceded by respondent, in this language as used in the brief:

"It was never contended by the State that this embezzlement took place when J. L. Brown failed to pay over to Hardwick the proceeds of this deal after it was 'closed out' on April 28th; the embezzlement occurred when Brown received Hardwick's money under specific instructions and immediately converted it to his own use."

This being conceded, we must look to what occurred between these parties prior and up to the time of the payment of the money.   The first communication is the telegram offered in evidence, which directed J. L. Brown & Co. to make the purchase of pork.   "Buy me one thousand bbl. July pork."   Defendant answered this telegram by letter of February 7, 1902, in which defendant states that he executed the order as per contract inclosed.   It is conceded by the State that the contract must control; but it contends that it must be construed in connection with the letter of the defendant, "*that he had executed the order* to buy so many bbl. of pork," and that it was for the jury to say whether or not the contract was a mere form to cover up defendant's real purpose, as shown by the results.

We will say now that this contention by the State can not be maintained.   It may be true that defendant's

letter may be considered in construing the contract, but it will be remembered that his letter expressly says, "We executed the order to buy as per inclosed contract." This does not change the contract; it is simply a reply, instead of executing your order as per telegram, we executed it as per contract inclosed. In other words, instead of buying for you the July pork, we furnish it to you ourselves. Nor was it the province of the jury to pass upon the legal effect of the contract. This is not an action to set aside this contract for fraud and deception, but is a criminal prosecution in which a contract, fixing the contractual relations between parties, is to be interpreted. The court should have declared the legal effect of this contract, according to its terms, and not permit the jury to say it was a mere form, and we will reject that part of the contract which says, "have bought from us," and insert in lieu thereof, "we have bought for you." The inclosing of the pamphlet, treating of how to speculate in grain, stocks, bonds and other securities, in his letter, even if that be true, forms no part of this contract, was not referred to either in the letter or in the contract, but upon that question the most satisfactory testimony, that of the manager of the printing company, who furnished the pamphlets, clearly shows that the pamphlet was not in existence at the time the letter was written, inclosing the contract.

Whatever the relations between the parties, Hardwick and Brown, they were created by the written instruments, introduced in evidence; that is to say, the telegram and the letter inclosing the contract and the contract itself. As to the acceptance of the contract and consenting to it, on the part of Hardwick, the disclosures in this record settle that beyond all question. Hardwick admits the receipt of the contract; it was received before the one thousand dollars, charged to have been embezzled, was paid to defendant. He admits that he read it over, made no objections to defendant as to the form of the contract, and it is not pretended that he did not understand its terms. He evidently did not expect from his telegram that the de-

fendant would furnish the July pork; he requested him to buy; but, of course, thought he would act as his agent, and buy it from some one else, but his own admission shows clearly that after receiving the contract, the defendant was not acting in the capacity he intended by his telegram, for he says: "I never was satisfied with the contract Mr. Brown sent me. I never made any complaint to Brown; I was persuaded not to; my judgment told me I ought to." This clearly demonstrates his understanding of it, and if he failed to make any objections to it and retained it and permitted the money to be paid defendant, upon the theory that he was buying the pork from him, then no one else is to blame that the relation of principal and agent was not created. It must be remembered that the relation of principal and agent can not be created by the act of one party; it can only be done by a contract, either express or implied, and the minds of both parties must concur. To our minds, this evidence was totally insufficient to establish the relation of agency on the part of defendant, and as before stated, the subsequent conversations on the 28th of April at the office of Brown did not supply this failure, for the agency had to exist at the time the money was received by defendant. In reaching this conclusion, we do not pretend to commend to the public the actions of the defendant, or pretend to deny that the testimony shows that he contemplated defrauding Hardwick out of his money, but that does not relieve us from the condition that confronts us that this is a prosecution, not for obtaining money under false representations or by fraud and deception, but is a criminal prosecution for embezzlement. This offense is charged in the information and based upon a statute which plainly defines it and sets forth with special particularity the elements of that offense. Further referring to this contract, the court gave this instruction number 5:

"The court instructs the jury that if you find and believe from the evidence that the witness Hardwick bought of the defendant one thousand barrels of Chi-

cago pork, July delivery, and that said Hardwick paid
to said defendant one thousand dollars as a margin
upon said purchase, and that said sale of said pork to
said Hardwick was made by said defendant, and that
said Hardwick consented and assented to the purchase
of said pork from said defendant, then you will find the
defendant not guilty."

The court evidently based this instruction upon the
contract inclosed in the letter from Brown to Hardwick.
This was a misconception of the duty of the court; it
was not for the jury, as before stated, to determine the
legal effect of the contract.    The telegram and the con-
tract, which this court holds under the evidence was rat-
ified by Hardwick, either established the relation of
principal and agent between these parties, or it failed
to do it, and it was the duty of the court to interpret this
written evidence.

"The interpretation of writings is always for the
court, except when they are ambiguous and the am-
biguity must be solved by extrinsic unconceded facts,
or when they are adduced merely as containing evidence
of facts from which different inferences can be drawn,
and then it is for the jury and not for the court to draw
these inferences."    [Enterprise Soap Works v. Say-
ers, 55 Mo. App. 15; Chapman v. Railroad, 114 Mo.
542.]

In the first mentioned case, the contract of rescis-
sion was deduced from correspondence. The court de-
claring that such correspondence rescinded the contract,
held that as to whether under the contract it was res-
cinded in a reasonable time, was submitted to the jury.

Another rule in the interpretation of contracts is
that "persons are presumed to employ words in their
usual sense and not otherwise," unless there is some-
thing indicating a contrary intention.    [Goode v. St.
Louis, 113 Mo. 1. c. 271.]

Now this contract offered in evidence by the State
uses the plain terms:  "Mr. E. F. Hardwick:  You
have this day bought from us at the regular commis-
sion, less the price named in this 'memo.' one thousand

barrels Chicago pork, at $16.05 per bbl., for delivery in July.'' There is no ambiguity in this contract. It fixes in the clearest terms the contractual relations between these parties. While this is not an action in a civil case, upon a contract, yet we know of no different rule to be applied in a criminal case where writings are introduced to establish any element of the offense; it is just as much the duty of the court to interpret the writing in a criminal as in a civil proceeding.

Our attention has been directed to the case of State v. Cunningham, 154 Mo. 161, as supporting the contention of the State in this case. An examination of that case reveals the fact that the principles announced are not in conflict with the views here expressed. In that case, a memorandum on a card was introduced, as tending to establish the relations between the parties. The court, speaking through BURGESS, J., said that this *card* was a mere memorandum, was incomplete in itself to show a contract, and therefore, parol testimony was admissible to supply the omitted parts of the contract. In the case at bar, we are not left to conjecture as to what the contract was; it was complete in itself.

If Hardwick desired to make Brown his agent or broker to invest money for him, all he would have had to do, was simply to return his contract, or notify him that he did not approve of it. Then if he held the money and converted it to his own use, he could have very appropriately and justly been called upon to answer for the offense charged. It will not supply the deficiency in this testimony to say, that this contract was a scheme and a fraud on the part of defendant. It might be said with equal propriety, that Hardwick was engaged simply in gambling in futures, neither of which are legitimate answers to the questions in dispute.

It was very appropriately remarked by this court in the case of State v. Cameron, 117 Mo. l. c. 648: ''It is not the policy of the law to punish as a crime the making of every foolish or ill-considered agreement.''

We simply desire to add that neither is it the policy of the law to punish as criminal the violation of every

foolish speculative contract. While we do not hesita. ?
to say that the actions of defendant, as shown from the
record, do not meet, with our approval, still we have
reached the conclusion that the evidence in this cause
failed to establish that defendant received the money as
charged, as the agent, clerk or servant of the prose-
cuting witness, and that the court should have so in-
structed the jury. Having reached this conclusion,
it is unnecessary to give our attention to the other nu-
merous complaints made.

The judgment of the trial court will be reversed
and the defendant discharged. All concur.