THE STATE v. ELIHU A. FLUESMEIER, Appellant.—1 S. W. (2d) 133.

Division Two, December 31, 1927.

*W. R. Dalton* and *Anderson, Gilbert & Wolfort* for defendant.

804

*North T. Gentry,* Attorney-General, and *J. D. Purteet,* Special Assistant Attorney-General, for respondent; *William Baer* and *Thomas B. Harvey* of counsel.

BLAIR, J.—Appellant was convicted of the crime of embezzlement in the Circuit Court of the City of St. Louis. He was duly sentenced to imprisonment in the State Penitentiary for a term of two years and has appealed. The indictment was in four counts, covering the same transaction. At the close of the testimony, the State elected to stand upon the second count, which charged appellant with embezzling certain mortgage bonds and $5,600 in money. The case was submitted to the jury only as to the charge of embezzling the money.

We have concluded that the venue of the alleged crime of embezzling the money was not properly laid in the city of St. Louis and will dispose of the case solely upon that point. We adopt the statement of facts prepared by the learned Attorney-General for the pur-

poses of the opinion. We assume that all the facts in the case tending to support the judgment are therein fully and fairly stated. Said statement follows:

"Herman Frederick Knippenberg, a resident of St. Charles County, Missouri, died on April 28, 1908, leaving a will disposing of his property. After bequeathing personal property to his children, five in number, the residue of his estate was given to his wife, Louisa Knippenberg, during her natural life, with power in her to dispose of the same during her life in such manner as she deemed best. Henry Knippenberg, his son, and Dr. E. A. Fluesmeier, his son-in-law (the defendant), were named executors of the estate. On December 18, 1909, Whitaker & Company, a bond house of the city of St. Louis, in the city of St. Louis, sold ten St. Joe Bay Company first-mortgage bonds, of the value of one thousand dollars each, to Henry Knippenberg and E. A. Fluesmeier, as executors of the Knippenberg estate, the check therefor being signed by this defendant and Henry Knippenberg as executors of said estate. On January 4, 1910, the executors purchased for the estate five more of the St. Joe Bay Company bonds, being of the same par value as those of the first purchase. After the estate was duly administered, Henry Knippenberg and defendant took possession of the corpus of the estate, and managed it in the matter of investments, etc. In July, 1914, this defendant was appointed guardian of Henry Knippenberg, and from and after that time had, as agent, the exclusive charge of the handling of the property of Louisa Knippenberg, including the St. Joe Bay bonds and the money derived from said bonds. Henry Knippenberg died on July 6, 1915. On March 15, 1914, default was made in the payment of interest on the St. Joe Bay Company bonds. Shortly thereafter, a committee was organized for the protection of the interests of the holders of these bonds. The St. Louis Union Trust Company was named as the depositary for said bonds. Some time during the latter part of 1915, defendant deposited the St. Joe Bay Company bonds which had been purchased for the Knippenberg estate, as aforesaid, with the aforesaid company, in the city of St. Louis, Missouri, and had the St. Louis Trust Company issue to him and in his own name certificates of beneficial interest numbered 164 and 165. Shortly after July, 1914, after the appointment of defendant as guardian of Henry Knippenberg and when he was in exclusive charge of the property of prosecutrix, defendant reported to her and the rest of the family that the St. Joe Bay bonds were lost to the estate as far as they were concerned.

"During the year 1916 the protective committee foreclosed on the collateral security behind the bonds. This security consisted of property and assets which the aforesaid committee continue to operate for the purpose of liquidating the bonds. As the assets were realized upon, liquidation dividends were distributed to holders of the certifi-

cates of beneficial interest issued by the St. Louis Union Trust Company. These dividends were paid by and through checks drawn on various St. Louis banks.

"Defendant Fluesmeier lived in Wright City, Warren County, Missouri. From February 12, 1917, to June 24, 1924, the St. Louis Union Trust Company paid, by checks drawn on different banks in St. Louis, dividends in the sum of fifty-six hundred dollars, on account of certificates of beneficial interest numbered 164 and 165, to the defendant. All of these checks were deposited in banks in Wright City, Missouri, by defendant. The last dividend check received by defendant was in the sum of eight hundred dollars, and was drawn on the 3rd day of June, 1924. Defendant, on the 23rd day of June, 1924, deposited this check in the Wright City Bank to the credit of his personal account. This check was drawn on the First National Bank of the city of St. Louis. The Wright City Bank transmitted said check to the aforesaid bank for collection, where it was paid in St. Louis on the 24th of June, 1924. The Wright City Bank paid this money out on checks drawn by defendant in his personal capacity.

"On January 19, 1925, defendant, after a quarrel and threatened litigation by the heirs of the Knippenberg estate, surrendered management and control of said estate at St. Louis, Missouri, by turning the assets thereof over to the Farmers & Merchants Trust Company of St. Louis and one Sidney A. Wildberger, as trustee, to manage said property.

"Neither the St. Joe Bay bonds, nor the certificates of beneficial interest numbered 164 and 165 previously taken in the name of the defendant, nor the $5,600 collected by him as liquidating dividends on said beneficial certificates, were accounted for or transferred to the new trustees, and the defendant in turning over property to the new trustees claimed to be turning over all the property which he had in his charge as agent for Louisa Knippenberg, the prosecuting witness. The day after defendant, at St. Louis, purported to be delivering over to the new trustees all property belonging to Louisa Knippenberg in his hands, defendant, at St. Louis, without consideration, transferred said certificates of beneficial interest to one Edward G. Stockton, and a new certificate was issued at St. Louis to said Edward G. Stockton by the St. Louis Union Trust Company, and immediately upon its issuance in the name of Stockton, Stockton indorsed it in blank and delivered it to the defendant Fluesmeier.

"On January 20, 1925, the day after defendant purported to turn over all property belonging to the prosecuting witness, and before the transfer of these certificates to Stockton, defendant told Stockton that he feared a lawsuit over these bonds and wanted them transferred out of his name. At the time of the trial in 1926, the certificate, according to the record of the St. Louis Union Trust Company, was still in the name of Stockton.

"The evidence introduced on behalf of the defendant tended to prove the following defense:

"He did not at any time purchase St. Joe Bay Company bonds for the Knippenberg estate from Whitaker & Company, but knew of their purchase. If any such bonds were purchased Henry Knippenberg executed the transaction. Defendant did not manage and control said estate as the agent and servant of said Louisa Knippenberg after his final settlement as executor of said estate until he was appointed guardian of the said Henry Knippenberg, in 1914. Henry Knippenberg died in the year 1915, at which time defendant assumed full control of the estate. Louisa Knippenberg placed all of the assets in his hands, but at no time did she ever give him the St. Joe Bay Company bonds, and at no time did they ever come into his hands as assets of the estate. Henry Knippenberg was a heavy drinker before his death, and before defendant took charge of the assets of the Knippenberg estate Bruce Fluesmeier, defendant's brother, was Henry Knippenberg's drinking companion. Defendant first saw the St. Joe Bay Company bonds in the possession of his brother. His brother owed him a personal debt of sixteen hundred dollars. Defendant took the bonds in payment of the debt. The bonds being his personal property and at no time the property of the Knippenberg estate, he was entitled to the liquidation dividends paid to him by the St. Louis Union Trust Company.

"Six witnesses testified to the good general reputation of the defendant in the community where he lived, for truth, honesty and veracity."

Appellant lived in Warren County. The checks received by appellant were issued in his name and were all deposited in banks in Warren County. The proceeds thereof were immediately and unconditionally credited to his accounts in said banks. Appellant checked against said deposits in Warren County for his personal use. On this state of facts the venue of the alleged embezzlement was in Warren County, not in the city of St. Louis. Appellant was convicted of embezzling money, not checks. The information charged embezzlement of bonds and money, but the charge that he embezzled bonds was not submitted to the jury. The fact that the embezzlement of the bonds, if such embezzlement occurred, took place in the city of St. Louis, may have induced the prosecution in the city of St. Louis.

The checks were issued in St. Louis and were ultimately paid there after they had been deposited by, and credit therefor given to, appellant in Warren County. Appellant was charged with embezzling the money of Louisa Knippenberg. The account in St. Louis upon which the checks were drawn and out of which they were paid belonged to the St. Louis Union Trust Company and not to Mrs. Knippenberg. It is not even shown that appellant ever had possession of the checks in the city of St. Louis.

The general rule laid down in 16 Corpus Juris, 189, is that "The crime of embezzlement is committed in the county in which the money or the property is converted, although it may have been received in another county, and it may, and as a rule should, be there indicted and tried."

In 9 Ruling Case Law, 1293, it is said : "As a general rule the accused must be tried in the county where the act of appropriation or conversion took place."

Appellant never had the money in the city of St. Louis before he deposited the checks and used their proceeds for his own purposes in Warren County. He could not have embezzled the money until it came into his possession. If the checks belonged to Mrs. Knippenberg as dividends on bonds owned by her, the embezzlement occurred when appellant wrongfully took credit in his own name for the checks, with the intent to use the money as his own. This occurred in Warren County, and not in the city of St. Louis. The appropriation and conversion of the money occurred in Warren County.

The State's brief suggests the theory that the appellant converted the bonds to his own use in the city of St. Louis, and that each dividend received by him thereafter was merely a part of the same scheme and amounted to a fresh embezzlement in the city of St. Louis. If appellant stood charged with embezzling the checks and there was any evidence in the record that he had received the checks in the city of St. Louis, there might be some merit in the contention. The embezzlement of the bonds, if any, occurred about ten years before this prosecution was instituted. The prosecution for such embezzlement was clearly barred when this indictment was returned. This doubtless accounted for the fact that the trial court submitted to the jury only the question of the embezzlement of the money.

Appellant cites State v. Sheets (Mo. Sup.), 289 S. W. 553. That case is not in point, because Sheets was charged with embezzling a draft, and not money. It was in Carter County that he wrongfully drew the draft in the name of his bank, payable to himself out of his bank's funds in Butler County. He appropriated and converted the draft to his own use when he paid his individual debt with the draft in Carter County. Had he been charged in Butler County with embezzling the money of the bank by means of the draft of funds of the bank kept on deposit in Butler County, the question of the venue in Butler County would perhaps have been determined differently.

The reasoning in State v. Bacon, 170 Mo. 161, 70 S. W. 473, clearly supports the appellant's contention on the question of venue. Bacon had been tried in Douglas County and was there acquitted of embezzling two drafts. He was later informed against and tried in Wright County for embezzling money, the proceeds of the same drafts, and was there convicted. The former acquittal in Douglas County was adjudged not to be a bar to the prosecution in Wright County.

The facts differ from those in the case at bar in that it does not appear where the deposit upon which the drafts were drawn was kept. It also appeared that Bacon had possession of the drafts in Douglas County. BURGESS, J., said:

"Defendant filed a plea of *autrefois acquit*, in which he alleged that he had been tried and acquitted of the same offense in Douglas County, Missouri.

"The facts constituting the offense charged in both informations were that the defendant was by Cheney entrusted with a pension check for thirty-six dollars in Douglas County, which he was to take from that county to Norwood in Wright County, Missouri, and cash, and return with the money to Cheney in Douglas County. The information in each case showed clearly that the defendant was entitled to and did take the draft to Wright County and cash the same.

"Under the instructions given by Cheney to defendant he was vested with authority to take the draft to Norwood in Wright County to have it cashed, and, in so doing, was not guilty of breach of duty, or of any crime; and was, therefore, properly acquitted in the Circuit Court of Douglas County of embezzling the draft. But with respect to the money realized by him upon the draft, he had no authority from Cheney, to whom it belonged, to do otherwise with it than to deliver it to him, and, in appropriating it to his own use, if he did so with a fraudulent intent without Cheney's consent, he was guilty of embezzlement. This was the theory upon which the case was tried, and was the proper one."

Appellant cites People v. Meseros, 116 Pac. 679. We regard the facts and conclusions stated therein as being in point here. Meseros was convicted in Alameda county of embezzling money which was the proceeds of two pay-checks intrusted to him to be cashed. They were cashed by Meseros in San Francisco and the proceeds were converted by him to his own use in that city. It does not appear whether or not the deposit against which the pay checks were drawn was in either jurisdiction. The court said:

"Each check was disposed of by defendant in San Francisco, and whatever money he received upon the checks was received in San Francisco. He was subsequently arrested on this charge in San Francisco; and there is not one word of evidence in the record that he ever returned to Alameda County until taken there in custody of the arresting officer; and certainly there is no evidence in the record that tends to show that he ever took any of the money into Alameda County or embezzled any of the money in said county.

"Under this state of the evidence appellant contends that the evidence is insufficient to support the charge made in the information, for the reason that the evidence shows that the money was both received and embezzled in San Francisco and not in Alameda County. This contention must be sustained."

Respondent cites State v. Mispagel, 207 Mo. 557, 106 S. W. 513. There Fox, P. J., reviewed a great many cases and held that the venue was not in St. Charles County, where Mispagel was convicted of embezzlement, but was in the city of St. Louis. Mispagel was cashier of the bank in St. Charles and drew a draft upon the St. Louis correspondent of his bank in favor of an investment company in St. Louis to apply upon his personal account. He was charged with embezzling money. It was held that he had constituted the investment company his agent to procure the money in St. Louis, and that the venue was there and not in St. Charles County.

That case differs from the case at bar in that Mispagel never procured any money on the draft in St. Charles County. He did not take credit for the draft in St. Charles County, and no money of his bank was procured until the draft was presented by the investment company to the company's correspondent in St. Louis. Then the money was paid in St. Louis out of the funds of the St. Charles bank kept in St. Louis. Hence, the conversion occurred in St. Louis.

In the case at bar the checks were not drawn on a deposit in the city of St. Louis belonging to Mrs. Knippenberg, and appellant's acquisition of her money was not postponed until the checks were presented and paid in St. Louis. As her agent appellant had the right to receive the checks in his own name and to deposit the proceeds in his own name. Even if the Warren County bank should be regarded as the agent of appellant to collect the proceeds of the checks, appellant had the right as agent to possession of such proceeds subject only to his duty to account to Mrs. Knippenberg. His conversion of such proceeds to uses of his own most certainly occurred no where else than in Warren County.

Respondent cites State v. Fischer, 297 Mo. 164, 249 S. W. 46, where it was held that the venue in an embezzlement case was in Laclede County where Fischer received the money for his employer and without authority cashed certain checks drawn to the order of his employer. The fact that Fischer was required to account to his employer in Greene County was held not sufficient to fix the venue in Greene County. The facts in that case appear to have no application to those in the case before us.

State v. Bouslog, 266 Mo. 73, 180 S. W. 859, does not aid respondent. It was there held that the venue was properly laid in Jackson County where Bouslog cashed a check for his principal and in that county failed to account to her for all of the proceeds of the check. It does not appear in the opinion where the bank upon which the check was drawn was located. The check was issued by a resident of Barton County. We have examined the original files in the case and the transcript shows that Bouslog testified he did not remember on what bank the check was drawn. The venue was held to be in Jackson County because Bouslog admitted that in Jackson County "he indorsed

this check at the request of the prosecuting witness who was the payee therein, and having so indorsed it 'cashed' it, i. e., turned it into money; and this was the *form* of it when he failed to account to Mrs. McClintock for it.'' So in the case at bar appellant cashed the checks in Warren County and the money was in his account there when he converted it to his own use by checking it out and failed to account to Mrs. Knippenberg for it.

In People v. Keller, 250 Pac. 585, cited by respondent, Keller was charged with embezzling money. The venue was held to be properly laid in Orange County where the bank was situated which had the deposit upon which, the check was drawn. Keller issued the check in Los Angeles to pay his personal obligation. The money was not withdrawn from his employer's account until the check was presented and cashed in Orange County, and Keller never had in his own possession the money he was charged with embezzling, unless he had it when it was drawn out in Orange County by innocent agents of his.

Respondent cites 10 Am. & Eng. Enc. Law (2 Ed.) 1025. That authority lays down the general rule that "the offense is committed not where the property is received, but where it is converted, unless it is received with intent to fraudulently convert it."

Respondent cites Landa v. Traders Bank, 118 Mo. App. 356, 94 S. W. 770; Brigance v. Bank of Cooter (Mo. App.), 200 S. W. 668, and Midland National Bank v. Brightwell, 148 Mo. 358, 49 S. W. 994. Those cases deal with the liabilities of banks in collecting drafts, etc., for their customers and their right to charge back to customers, to whom credit has been given, when the collection is not made. The deposit slips shown in this case are unconditional upon their faces. If appellant's pass book carried any notice to the contrary, such fact does not appear in the evidence.

Suppose in the case at bar that appellant should be held to have received the money in St. Louis through his agents, the Warren County banks, and that he was under obligation to account to Mrs. Knippenberg for it. There cannot be the slightest doubt even then that the money came into the Warren County banks in two or three days at most. On the theory that appellant was the agent of Mrs. Knippenberg, he had the right to receive the checks in his own name and to cash them, subject only to his duty to account to her therefor. There is no evidence that appellant converted the money until he checked it out of the Warren County bank for his own purpose. Such conversion occurred in Warren County. But, says the State, the fact that appellant converted the bonds in St. Louis proved his intent to embezzle the proceeds of the checks when they were issued. Appellant was not charged with the embezzlement of the checks and could only be convicted of embezzling the money after he had the money in his possession.

We have carefully considered all the cases cited and have pursued independently an extensive examination of texts and adjudicated cases. Quite a plausible argument is made that the venue was properly laid in the city of St. Louis. The question is not entirely free of difficulty. However, it is our conclusion, in view of all the authorities and cases considered, that the conversion of the money did not occur in the city of St. Louis and that appellant was not properly tried for its embezzlement in that city.

It is unnecessary to consider other questions in the case. The judgment should be reversed and the cause remanded in order that the trial court may dispose of it in a manner consistent with the views of this court concerning the venue of the alleged offense.

Let an order go accordingly. All concur.