THE STATE v. EARL WATKINS, Appellant.—87 S. W. (2d) 184.

Court en Banc, October 18, 1935.

*Cullen Coil* and *Patrick H. Cullen* for appellant; *Cullen, Fauntleroy & Edwards* of counsel.

*Roy McKittrick,* Attorney General, *Gilbert Lamb, John W. Hoffman, Jr.,* and *Drake Watson,* Assistant Attorneys General, for respondent.

WESTHUES, C.—Appellant was charged, by an indictment, in the Circuit Court of the City of St. Louis, Missouri, with the crime of embezzlement. The indictment alleged that appellant, on May 14, 1931, as the agent and servant of William and Grace Ehrenberg, embezzled the sum of $8720. Upon a trial he was found guilty and the jury, by their verdict, assessed a punishment of five years' imprisonment in the penitentiary. From the sentence imposed he duly appealed.

The principal point upon which a reversal of the judgment is sought is, as appellant contends, that the evidence failed to establish an essential element of the crime as charged, that is, the State failed to prove appellant to have been the agent or servant of the Ehrenbergs. It is contended that the evidence showed the Davis Realty Company, with which company appellant was connected, was the agent of the Ehrenbergs.

William and Grace Ehrenberg were husband and wife. They purchased a four-family apartment building at 6737 Plymouth Street in the city of St. Louis, Missouri. This property was encumbered, at the time of the purchase, by a deed of trust in the sum of $8500, which had been negotiated by the Laclede Bonding Company. The Ehrenbergs had the cash on hand to pay this encumbrance, but the holder of the deed of trust, the Metropolitan Loan Company, was unwilling to accept the amount of the loan and accrued interest because it was considered a good loan and was not due for fourteen years. The Ehrenbergs were unwilling to pay a bonus to have the debt discharged.

Appellant and the Ehrenbergs were not personally acquainted prior to this transaction. Appellant obtained information of the fact that the Ehrenbergs desired to pay the loan on this property.

Thereafter, on May 14, 1931, he went to the Ehrenberg home and introduced himself as Earl Watkins from the Davis Real Estate Company. He also told the Ehrenbergs that a Mr. Heims, an uncle of appellant, had sent him to see them. Watkins, according to the evidence of the Ehrenbergs, informed them that he could pay off the loan in ten days without the bonus if they would let him have the money. The Ehrenbergs at first refused, saying there was no use because they had tried and failed. Watkins is alleged to have told the Ehrenbergs that a Mr. Ford, whom he well knew, was the vice president of the Franklin American Bank and also a director of the Metropolitan Loan Company and he, through Mr. Ford, could handle the situation. Mrs. Ehrenberg then signed a check in blank, on the South Side Lafayette Bank, where the money was on deposit, and gave it to Mr. Ehrenberg with instructions to go and consult Mr. Hoeffel, a relative, and if Mr. Ehrenberg and Mr. Hoeffel thought Mr. Watkins could arrange to pay off the deed of trust to give him the money. Mr. Ehrenberg and appellant then left the home and went to the car of appellant where they found Mr. Heims. The three proceeded to the bank, first stopping for Mr. Hoeffel who was at work. From there all four went to the South Side Lafayette Bank. We learn from the evidence that Mr. Hoeffel also informed appellant that it would be impossible to pay off the loan without paying the bonus. Watkins again assured them that he knew he could do so. At the bank Ehrenberg and Hoeffel agreed to turn over the money to Watkins. Hoeffel, who seemed to be the spokesman, asked the cashier for a cashier's check. He thereupon turned to Watkins and asked who should be named as payee in the check and appellant answered, "E. Davis Realty Company." The four men then went to the office of the Davis Realty Company. There Ehrenberg gave Watkins the cashier's check for $8720 in exchange for a receipt which read as follows:

"'Davis Realty & Mortgage Company, ground floor, 11th & Locust Streets, St. Louis, May 14, 1931. Received of William Ehrenberg the sum of $8,500.00, Eight Thousand, Five Hundred Dollars, principal and $220.00, Two Hundred and Twenty Dollars, interest to pay deed of trust on Lots I and J, Block 9, Bellemoor Park and improvements thereon. The above amount to be in payment in full without further interest or penalty. Papers to be delivered on or before their maturity. E. Davis Realty Company, by Earl Watkins, Vice-president.'"

These transactions all occurred on the 14th day of May, 1931.

Thereafter Hoeffel, a brother-in-law of Ehrenberg, phoned appellant a number of times, asking if the loan had been paid. Hoeffel went to see appellant on June 4. As to what transpired then Hoeffel testified as follows:

"A. The next time I saw him at the office?

"Q. Yes, sir. A. That was the 4th of June, I saw him there, and I asked him what he has done about paying off this loan and he said, 'Well, I just was notified today to bring the check and money over to the mortgage company to pay this loan.' ''

We infer from the evidence that the Ehrenbergs had received a letter from the Laclede Bonding Company with reference to this loan. The contents of this letter were not admitted in evidence. Hoeffel testified that he showed the letter to appellant and appellant advised him not to pay any attention to it. Hoeffel again saw appellant on the 8th day of June. At this time a Mr. Holmes was present by appointment with Mr. Hoeffel. Hoeffel testified:

"Q. What conversation did you have or did anyone else have in your presence with Mr. Watkins? A. I didn't have much to say. Mr. Holmes done all the talking while I was there.

"Q. What did Mr. Holmes say to Mr. Watkins and what did Mr. Watkins say? A. Mr. Holmes said, 'What have you done with the money if you haven't paid off the loan?' And he said well he supposed he used it for some other business purpose than paying off this loan, and he smiled and said he was advised not to talk."

On June 9, Mr. Holmes, Mr. Hoeffel and Mr. Ehrenberg went to the office and had another conversation with appellant. At this time appellant, as per testimony of Hoeffel, informed them that he had papers laid away to take care of the Ehrenberg money. A lawyer, by the name of Williams, was called to see if the papers were good. Williams examined them and also examined the record in St. Louis County and informed Ehrenberg the papers represented notes and a first deed of trust on property in St. Louis County. Evidence was introduced, by appellant, showing that the notes were secured by a first deed of trust on property sufficient to secure the notes and in an amount equal to the money advanced by Ehrenberg. Ehrenberg testified that he never heard of the notes and deed of trust laid aside by Watkins until the 9th day of June. The papers were left at the office of the Davis Realty Company. The following day, June 10, a receiver was appointed for the Davis Realty Company.

On February 3, 1933, Ehrenberg, through attorneys, filed a written demand in the receivership suit for the notes and deed of trust above mentioned. This demand contained the following:

" 'For grounds of this motion this applicant states heretofore, on about the 14th day of May, 1931, he did deposit with E. Davis Realty Company the sum of $8,720 for the purpose of having the E. Davis Realty Company pay off therewith a deed of trust on lots I and J, in block 9, Bellemoor Park, and as security for his said money during the interval which might elapse between the time said money was so paid by applicant and said deed of trust should be paid off, the above-described securities were set aside and appropriated to the use and benefit of said applicant, and were accepted by this applicant as

security for said money until said deed of trust should be paid off.' ''

The evidence does not disclose what ruling was made on this demand.

The cashier's check delivered to appellant was deposited in a bank to be credited to E. Davis Realty Company, syndicate number six. The State also introduced evidence showing that the note, secured by a deed of trust on the Ehrenberg property, was not paid as appellant had agreed to do. The State called as a witness an officer of the Laclede Bonding Company, who had charge of this particular loan. This witness testified that appellant had not at any time discussed with him the question of paying off this loan.

█ It was appellant's position at the trial, and is here, that by the evidence it was conclusively shown appellant was not the agent of the Ehrenbergs. It is argued that the receipt, given on May 14, when the cashier's check was delivered to appellant, constituted a contract between the Davis Realty Company and the Ehrenbergs and all prior oral negotiations merged in the written contract. Appellant has cited a number of cases in support of this contention. It is urged that State v. Brown, 171 Mo. 477, 71 S. W. 1031, is a complete answer to this question. In the Brown case the prosecuting witness wired the defendant: ''Buy me one thousand bbl. July pork. Will have Exchange Natl. Bank wire you the money.'' In place of Brown, the defendant, obeying the instructions in the telegram, he sent the prosecuting witness a letter stating that he, the prosecuting witness, had that day bought of the defendant one thousand barrels of July pork. This court held that the prosecuting witness acquiesced in the contract, as altered by the defendant, prior to the time any money was paid. Note what the court said:

''As to the acceptance of the contract and consenting to it on the part of Hardwick, the disclosures in this record settle that beyond all question. Hardwick admits the receipt of the contract. It was received before the $1000 charged to have been embezzled was paid to defendant. He admits that he read it over, made no objections to defendant as to the form of the contract, and it is not pretended that he did not understand its terms. He evidently did not expect from his telegram that the defendant would furnish the July pork. He requested him to buy, but, of course, thought he would act as his agent, and buy it from someone else; but his own admission shows clearly that after receiving the contract the defendant was not acting in the capacity he intended by his telegram, for he says: 'I never was satisfied with the contract Mr. Brown sent me. I never made any complaint to Brown. I was persuaded not to. My judgment told me I ought to.' This clearly demonstrates his understanding of it, and, if he failed to make any objections to it, and retained it, and permitted the money to be paid defendant upon the theory that he was buying the pork from him, then no one else is to blame that

the relation of principal and agent was not created. It must be remembered that the relation of principal and agent cannot be created by the act of one party. It can only be done by a contract, either express or implied, and the minds of both parties must concur.''

It will be noted the court emphasized the fact that the prosecuting witness received Brown's letter and with full knowledge of the terms stated in the letter paid the money. A receipt, under certain circumstances, may constitute a contract. As a rule, however, a receipt merely signifies that the party giving it has received the article mentioned therein. [52 C. J. 1190.] In this case appellant contends that since the receipt for the money was given by the Davis Realty Company it constituted a binding contract between that company and the Ehrenbergs; that the terms thereof could not be contradicted by parol evidence. The terms mentioned in the receipt are not very different from those agreed upon, as testified to by Ehrenberg, except that the receipt was given in the name of the company. However, there was no evidence in the record showing that either of the Ehrenbergs knew anything about the Davis Realty Company, that is, whether it was merely a trade name, copartnership or corporation. The argument is also made that under the terms of the receipt the note and deed of trust were to be delivered ''on or before their maturity'' and not within ten days, as testified to by the witnesses for the State. Ehrenberg testified he did not know the meaning of the word ''maturity.'' Appellant evidently did not place this interpretation upon the receipt or treat it as a binding contract because, after the receipt had been given, he, on a number of occasions, informed Ehrenberg and Hoeffel that he would pay and discharge the debt within ten days. As late as the 4th day of June he informed Hoeffel that he had received notice from the Laclede Bonding Company that it was ready to receive money and discharge the loan and he, Watkins, would do so the next day. Appellant, during the negotiations for the money, led the Ehrenbergs to believe that he, through a personal acquaintance with a member of the board of directors of the Metropolitan Loan Company, could manage to pay the loan without the payment of the bonus. Appellant, after the receipt had been given, reiterated that the money was to be used as agreed, that is, to pay off and discharge the lien on the Ehrenberg home within ten days.

From what has been said we are of the opinion that the evidence justified a submission of the question to a jury of whether appellant acted as the agent of the Ehrenbergs. This the court did by proper instructions. A number of instructions given required the jury to affirmatively find, before a conviction was authorized, that appellant was the agent or servant of the Ehrenbergs. Another instruction told the jury that if they found that the Davis Realty Company was the agent of the Ehrenbergs then they should acquit appellant. The

evidence justified the finding of the jury upon this issue. [State v. Obuchon, 159 Mo. 256, 60 S. W. 85; State v. Brown, supra; State v. Adams, 318 Mo. 712, 300 S. W. 738, l. c. 742 (6); State v. Miller, 332 Mo. 307, 57 S. W. (2d) 1080, l. c. 1081 (2).] Certainly at the time appellant obtained the authority to direct as to how the cashier's check should be written he acted as the agent of the Ehrenbergs by mutual understanding. Appellant at that time, by his own act and with the consent of the Ehrenbergs, took control of how the money should be diverted from the Mrs. Ehrenberg account to himself. Having received the money as agent appellant was bound by the verdict of the jury on that issue. [State v. Gould, 329 Mo. 828, 46 S. W. (2d) 886, l. c. 889 (2, 3), and authorities there cited. See, also, State v. Heath, 70 Mo. 565; State v. Spaulding, 24 Kan. 1; State v. Silva, 32 S. W. 1007, 130 Mo. 440.]

Appellant also insists that even if he could have been considered the agent of the Ehrenbergs there was a material variance between the charge and the proof in that he was charged with embezzling money, and the evidence, if it supported any charge, showed that he embezzled a check or draft. To this we cannot agree. If appellant was the agent of the Ehrenbergs he had authority to cash the cashier's check and obtain the money. He, therefore, could not have been convicted of embezzling a check or draft which he had the legal right to cash. [State v. Fluesmeier, 318 Mo. 803, 1 S. W. (2d) 133.] In State v. Ross, 312 Mo. 510, 279 S. W. 411, l. c. 415, this court said:

"A variance is claimed between the pleading and the proof because the proof shows that there was an embezzlement of the *check* for $3,342.47, and not an embezzlement of the money, the proceeds of the check. Proof of the embezzlement of a check will not sustain a charge of the embezzlement of the money. [State v. Castleton, 255 Mo. l. c. 210, 164 S. W. 492.] The appellant cites in this connection, the case of State v. Fischer, 297 Mo. 164, 249 S. W. l. c. 48, 49. In that case we pointed out that, if the defendant had no authority to collect the check, when he collected it he embezzled the check and not the proceeds of the check. But if he had authority to collect the check, and collected it and converted the money to his own use, he embezzled the money."

The ruling in the Ross case was approved by this court in State v. Miller, 332 Mo. 307, 57 S. W. (2d) 1080, l. c. 1082 (5-7). [See, also, 20 C. J. 431, sec. 18.]

Appellant insists that the trial court committed error in admitting in evidence the indorsements appearing on the draft and evidence of it having been deposited to the credit of the E. Davis Realty Company, syndicate number six. The reason assigned, by appellant, was that there was no evidence that he deposited the draft

or that he authorized the indorsements appearing thereon. The indorsements read as follows:

"'Davis Realty Company, Earl Watkins, Vice-President, pay Franklin Bank 4-11 St. Louis or order 4-11 E. Davis Realty Company for Syndicate No. 6. St. Louis Clearing House 2, May 15, 1931. All prior endorsements guaranteed, Franklin American Trust.'"

The State offered evidence that the words "Earl Watkins, Vice-President" were in the handwriting of appellant. The admission in evidence of the indorsements was, therefore, entirely proper to show the disposition made of the draft. With no evidence to the contrary the authenticity of the indorsement, by rubber stamp, may be inferred from the fact that appellant personally indorsed the draft. [City of Maplewood ex rel. v. Johnson, 273 S. W. 237, 1. c. 239 (6).] The draft was in appellant's possession and under his control. It was written as he had dictated. He had the lawful right to indorse and cash it. The proceeds, however, to be applied to the payment of the note and deed of trust on the Ehrenberg property. The evidence that the draft was deposited to the credit of E. Davis Realty Company, syndicate number six, taken in connection with appellant's statement, when asked what had become of the money, that he had used it in some other business, justified the inference that appellant knew what had become of the proceeds and knew they had been misappropriated. Another point made in the motion for a new trial was that the draft itself and all indorsements thereon were incompetent because appellant was not charged with embezzling a draft but was charged with embezzling money. What has been said above, with reference to the sufficiency of the evidence to submit the question of appellant's agency to a jury, disposes of this point.

■ Error was assigned with reference to a ruling of the trial court in permitting Ehrenberg to testify that one of his lawyers had been selected through a Mr. Hudson, an attorney formerly connected with the Davis Realty Company. Appellant's counsel first brought this question into the case through his cross-examination of Ehrenberg. In this cross-examination, which was very lengthy, appellant's counsel brought out the fact that Ehrenberg had employed lawyers to establish his claim to the papers, that had been placed in an envelope by Watkins, as security for his money. On redirect examination Ehrenberg was asked how he happened to employ the attorneys named, and answered, one of his attorneys was appointed through Mr. Hudson who "used to be with the Davis Real Estate Company." This evidence went into the record without objection. No motion to strike out the evidence was made. There was an objection made after the question had been fully answered. An objection at that time was too late. Objections to further questioning on the subject

were sustained by the trial court. We cannot conceive how this evidence could have been harmful to appellant. Ehrenberg was much concerned about losing his money. He was a man of limited education, a butcher by trade and not wealthy. He, therefore, consulted the officers of the company. The fact that the attorney, Hudson, who had been connected with the Davis Realty Company, advised Ehrenberg to get a lawyer was entirely ethical. He, of course, could not have represented Ehrenberg. We find this contention to be without merit.

The giving of certain instructions was assigned as error. The principal ground relied on was that the evidence did not authorize instructions on the question of appellant being the agent of the Ehrenbergs. We disposed of these contentions under the discussion of the sufficiency of the evidence. Other objections to the instructions are without merit. We have examined them closely and find that the trial court fully instructed upon every contention made by appellant. The question of appellant's agency was submitted to the jury under a number of instructions. The court also instructed the jury that if the Ehrenbergs deposited $8720 with the Davis Realty Company, on May 14, 1931, and accepted as security certain notes and a deed of trust to be held during the interval, that is until the deed of trust on the Ehrenberg property was discharged, then in that event appellant was not the agent of the Ehrenbergs and the jury should find appellant not guilty. Appellant's theory was that, on May 14, the Ehrenbergs accepted the receipt and security mentioned. The State's theory was that the notes set aside for the Ehrenbergs were not placed in the envelope until the 9th of June, the day before the receivership, and that this was done in an attempt to prevent a criminal prosecution. Appellant's theory was fully submitted to the jury and he has no ground for complaint.

Appellant also complains of the trial court's action in refusing to give a number of instructions requested by him. These instructions were in substance the same as those given by the court. There was, therefore, no error in the refusal of these instructions.

The argument of counsel for the State was made the subject of an assignment of error. The part objected to reads as follows:

"Mr. Cullen knows if there was one syllable of testimony that he could have gotten from the Metropolitan Life Insurance Company that would have tended to show Earl Watkins had raised one finger in order to pay this loan he would have had it here, he would have had the witnesses here, be they from St. Louis or the home office, wherever that is. You may be sure, gentlemen, and you must be sure that he didn't raise one finger to pay off the loan, that when this check got in his hands, this check he apparently needed badly to take down, to rush down and deposit, if you please, not to the Davis Realty Company but to E. Davis Realty Company, Syndicate No.

6—there is no evidence in this case that shows he got a penny of it—on the other hand, there is no evidence in this case that shows he didn't get every penny of it and that would have been a matter of competent evidence that these gentlemen could have presented in this case if they wanted to.''

At this juncture counsel for appellant objected on the ground that the argument constituted a comment on the failure of the defendant to testify. The objection was sustained. A request for a reprimand was granted, but the motion for a mistrial was overruled. There was certainly no error in refusing to declare a mistrial. Only by a strained construction can the argument made be construed as a comment on the failure of appellant to testify. Counsel for the State had a right to comment on the fact that appellant failed to call officers of the Laclede Bonding Company and the Metropolitan Loan Company and to introduce the records of the banks to disprove the charges made against appellant by the State's evidence. If the State's evidence was untrue it could have been easily contradicted by witnesses and records without calling appellant to the witness stand. State's counsel clearly had the right to comment on the failure of appellant to produce such evidence. The argument seems to have been leveled particularly at the failure of appellant to offer evidence to disprove these accusations. In other words the State offered evidence that appellant claimed he had arranged to discharge the loan on the Ehrenberg home; that he had received notice to take the money to the bonding company on a day certain. The State proved that these assertions, made by appellant, were false.

The rule of logic contended for by appellant and in support of which he cites cases does not apply to this case. That rule is, that where a defendant was naturally the only person who would have full knowledge of the facts, and the argument necessarily referred to the defendant as failing to testify to those facts, the argument would be in violation of the statute. [State v. Snyder, 182 Mo. 462, 82 S. W. 12, l. c. 31; State v. Shuls, 329 Mo. 245, l. c. 252, 44 S. W. (2d) 94, l. c. 96 (8-10); State v. Watson, 1 S. W. (2d) 837, l. c. 840, 841.] The argument in this case did not necessarily refer to the defendant as failing to testify. The court, therefore, did not abuse its discretion in refusing to declare a mistrial. The ruling of the court, we think, in sustaining appellant's objection and reprimanding counsel for the State, was favorable to appellant.

Finding no reversible error in the record the judgment is affirmed.

Division Two opinion is hereby adopted as the opinion of the Court en Banc. All the judges concur.