## L. H. KRALLMAN, Respondent, v. M. POTASH-NICK, Appellant.

### St. Louis Court of Appeals, June 8, 1915.

1. **EVIDENCE: Rejection: Cumulative Evidence.** It is not error to reject evidence, where the fact it tends to prove is otherwise established and the adverse party admits it to be true.

2. **TRIAL PRACTICE: Remarks of Court: Invited Remarks.** Where, in examining plaintiff, defendant's counsel asked plaintiff if he did not know that he was bolstering up his case with something that was not true, in testifying to a certain matter, and the court sustained an objection to the question with the remark that this was taking advantage of the witness when he could not protect himself and that the question was therefore improper, *held* that the question, in the form propounded, was highly improper and embarrassing to the witness, and defendant, therefore, was in no position to complain of the stricture laid upon it by the court.

3. **SALES: Action for Purchase Price: Customs and Usages: Rejection of Evidence.** In an action by one commission merchant against another for the purchase price of string beans, plaintiff claimed that defendant purchased the beans unconditionally, knowing they were inferior in quality, for much less

Krallman v. Potashnick.

than the selling price of good beans, and that, after examining the beans contained in some of the hampers, he declined to make a further inspection. Defendant claimed that the purchase was by sample and that plaintiff agreed that the beans contained in the hampers not opened were of equal quality to those inspected. *Held*, that the court did not err in declining to complicate this issue by admitting evidence of a custom among commission men that goods purchased by sample might be returned if not equal to the sample.

4. ————: ————: Instructions. In an action by one commission merchant against another for the purchase price of string beans, plaintiff claimed that defendant purchased the beans unconditionally, knowing they were inferior in quality, for much less than the selling price of good beans, and that, after examining the beans contained in some of the hampers, he declined to make a further inspection. Defendant claimed that the purchase was by sample and that plaintiff agreed that the beans contained in the hampers not opened were of equal quality to those inspected. *Held*, that the issue involved was properly submitted by instructions to find for plaintiff, if defendant unconditionally purchased the beans at an agreed price, whether they were good or bad, and inspected a portion of them and declined to inspect the remainder, and to find for defendant, if the beans were sold on condition that they were all to be in as good condition as those contained in the hampers that were opened and examined and if those in the hampers not opened were not in as good condition as those that were examined.

5. ————: ————: Evidence: Admissions. In an action by one commission merchant against another for the purchase price of string beans, plaintiff claimed that defendant purchased the beans unconditionally, knowing they were inferior in quality, for much less than the selling price of good beans, and that, after examining the beans contained in some of the hampers, he declined to make a further inspection. Defendant claimed that the purchase was by sample and that plaintiff agreed that the beans contained in the hampers not opened were of equal quality to those inspected. Plaintiff, on cross-examination, stated that if the beans were rotten, he would not expect any person to pay for them. *Held*, that this was not, as claimed by defendant, an admission on his part that the contract was not as he stated it was, but, considered in connection with all of his testimony, amounted to nothing more than an admission that if *all* of the beans were rotten, he would not expect payment.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*James M. Rollins, Burr S. Goodman* and *Joseph Reilly* for appellant.

(1)   The evidence in this case shows that there was a mutual mistake.   The plaintiff at the time of sale, according to his own testimony, ''wouldn't expect any person to pay for the beans if they were rotten when sold.''   The defendant thought he was buying beans fit for human food, as, unless they were fit for human food, they were worthless for any purpose. In an action on a promissory note for a horse worthless for any purpose there is a total failure of the consideration; and the fact that defendant has made partial payments on the note does not estop him from pleading failure of consideration.   Danforth v. Crookshanks, 68 Mo. App. 311.   (2)   In a suit by payee upon a note given for goods sold, the maker may show in a defense of failure of consideration, that the goods were not as described and warranted at the sale, or that they were worthless for the purposes for which they were sold.   Murphy v. Gay, 37 Mo. 536; Brown v. Weldon, 99 Mo. 564.   In Lee v. Sickles Saddlery Co., 38 Mo. App. page 206, J. Biggs quotes from Lord Ellenborough: ''When there is no opportunity to inspect the commodity, the maxim *caveat emptor* does not apply. . . . The purchaser cannot be supposed to buy goods to lay them on a dung hill.''   Lee v. Sickles, 38 Mo. App. 201.   (3)   Goods sold for the ordinary price and for a particular purpose known to the vendor carry an implied warranty that they are reasonably fit for the use intended and if not so fit the vendee may return them to the vendor, thereby rescinding the sale or keep the same and defeat recovery of the purchase price to the extent of the difference between the value if the goods had been of the quality contracted for and their real value in their inferior condi-

tion. St. Louis Brewing Association v. McEnroe, 80 Mo. App. 429.

*Frank A. C. MacManus* for respondent.

NORTONI, J.—This is a suit for the purchase price of some string beans. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

It appears that both plaintiff and defendant are commission merchants in St. Louis, and the matter in controversy pertains to the purchase of sixty hampers of beans at $1 per hamper. The evidence tends to prove that plaintiff had received a consignment of string beans from the south, sixty hampers in all. It is said that a hamper is a wooden receptacle with a closed top fastened by a clamp. At the time defendant approached plaintiff's place of business, several hampers of beans were standing on the sidewalk with the lids removed, while the major portion were still on the express wagon, not having been unloaded therefrom. According to plaintiff's evidence, defendant examined the beans contained in six or eight hampers so resting on the sidewalk and proposed to buy the lot. Plaintiff says standard string beans were worth about $2 to $2.25 per hamper at the time, but these being of inferior quality, defendant offered him $1 per hamper for the lot, and declined to make a further inspection thereof.

The theory of the case presented by plaintiff and portrayed in his evidence is, that both parties knew the beans were of inferior quality. They were neighboring commission merchants on the street and familiar with such commodities. Plaintiff says that defendant, knowing the beans to be of inferior quality and having examined some six or eight hampers that were open said: ''I don't want to see any more; I will give you a dollar a hamper for the lot; that is the very

words he said.'' He accepted this offer, in the view that it was an unconditional one, whether the beans were good, bad or indifferent—that is, as if plaintiff were to take them notwithstanding their condition. Defendant, on the other hand, insists that he purchased the beans as by sample—that is to say, he examined four hampers, according to his evidence, which were then opened, and it was agreed that those contained in the unopened hampers on the wagon should be of the same quality. Concerning this, defendant testified: ''That the beans should be as represented, as that few hampers we looked at; the balance should be as good as what we seen.''

After purchasing the beans, defendant moved them to his store and upon examinating the lot found that all of them, save some four or five hampers, were water soaked, and almost all of them rotten, so as to be unfit for food. Thereupon, he sent all back to plaintiff's store, excepting four hampers, which he sold, and for these he tendered $5. Plaintiff declined to accept the tender of $5 and likewise an offer of $10 for a release and also declined to accept the return of the beans, insisting that defendant purchased them for better or worse, as they should appear to be. Plaintiff notified the city authorities and it appears an officer of the health department visited his store during the afternoon and condemned all of the remaining fifty-six hampers of beans as unfit for food. After having condemned the beans, the officer poured coal oil upon them, as is the practice, in order to prevent their possible sale in the market thereafter.

The evidence excludes the idea of an implied warranty that the goods were fit for use, in that the express contract of purchase shows either an unconditional sale, or one by sample with an express warranty.

The court submitted the issue to the jury on the part of plaintiff under an instruction substantially

Krallman v. Potashnick.

to the effect that if it found defendant unconditionally purchased the beans—that is, whether good or bad— at the agreed price, and actually inspected a portion of them and declined to inspect the remainder, then he was liable for such purchase price, nowithstanding the condition the beans were in.

On the part of defendant, the court submitted the question according to his version of the contract of purchase under the following instruction:

"If the jury find from all the evidence that the beans in question were sold to defendant on condition that they were all to be in as good condition as the beans contained in certain hampers that it is admitted were opened and examined, and if you further find from the evidence that the beans in the hampers that were not opened were not in as good condition as those in the hampers that were opened and examined, you will find for the defendant, except as to the five dollars tendered into court, and in any event you will find in favor of plaintiff for $5."

Under these instructions the jury found the issue, as before stated, for plaintiff for the amount of the purchase price.

It is argued the court erred in excluding evidence offered by defendant to the effect that the beans, all save four hampers, were condemned by the city authorities as unfit for food; also that it erred in excluding the report of the inspector of the health department thereon. Obviously there is no error in this, for the record abounds with evidence to the same effect, and, indeed, plaintiff in his testimony admitted that he knew the beans were condemned as unfit after the purchase, and actually destroyed by the city authorities. The evidence thus excluded is only cumulative on a matter which seems not to have been controverted —that is, that fifty-six hampers of beans were condemned and destroyed.

Defendant's counsel propounded a question to plaintiff while he was on the stand and to it the court sustained an objection. The question and the ruling of the court thereon were as follows: ''Don't you know that you are now bolstering up your case with something that is not true, when you say that the defendant said, 'I don't want to see any more?' '' The court sustained the objection to this question with the remark that this is taking advantage of the witness on the stand when he cannot protect himself and the question is, therefore, improper. It is argued this ruling and comment of the court was prejudicial. The question, in the form propounded, was highly improper and embarrassing to the witness, to say the least. Defendant may, therefore, not complain of the stricture laid upon it by the court in the ruling given.

Defendant sought to prove a custom among the commission men to the effect that, when a purchase was made between them on sample, if the goods not examined turned out to be below the standard exhibited as a sample, they were returned and credit given accordingly. The court excluded this evidence and it is argued that error inheres in the ruling. If it were conceded in the case that the sale was made by sample, it may be the ruling of the court would be subject to the criticism levied against it, but here the issue was sharply drawn as to the character of the contract of purchase, and this being true, it cannot be said the court erred in the ruling complained of. Plaintiff affirmed that the beans were purchased by defendant as inferior in quality, unconditionally, at a dollar per hamper for the lot, when the selling price of good beans was $2 to $2.25 per hamper, and that plaintiff declined further inspection proposing to take them as they were, notwithstanding what the condition of those not examined by him might turn out to be. On the other hand, defendant insisted the purchase was by sample, in that plaintiff agreed the beans

contained in the hampers not opened were of like qual-
ity with those he inspected.  This being the true issue
for the determination of the jury, it cannot be said
that the court erred in declining to complicate it by
the admission of.evidence of a custom which prevailed
with respect to transactions involving sales admitted
to be made by sample.  The true issue in the case—
that is, as to the character of the contract of purchase
—was submitted well enough by the instructions of
the court given on behalf of plaintiff and defendant
above referred to.

There is evidence tending to prove that the beans
were not all rotten, but that some of them in all of
the hampers were, and, therefore, the lot was regarded
as second or third in quality.  It is said some of the
beans in the hampers that plaintiff examined were
rotten too.  In plaintiff's cross-examination he said
at one place, "No sir; I didn't; if the beans were rot-
ten I would not expect any person to pay for the
beans."  It is earnestly insisted that this amounts to
an admission on his part that the contract of pur-
chase was not as he testified—that is, that plaintiff
was to take them at one dollar per hamper notwith-
standing their quality.  But this answer must be read
in connection with all the testimony of the same wit-
ness, and, as before said, there is an abundance of
evidence that the beans were not all rotten.  At least
four hampers are admitted to have been of fair qual-
ity, and it is said there were good and bad beans com-
mingled throughout all the others.  This being true,
the admission amounts to no more than if all of the
beans were rotten then defendant would not expect
payment, and it sufficiently appears that both parties
knew some of them were and some were not.  The
question of liability in the case turns on the character
of the contract of purchase and that was properly
submitted by the instructions given.

The court did not err in refusing the instructions requested by defendant, for the reason that they do not appear to require a finding by the jury with respect to the true issue—that is, as to what the parties intended at the time the contract of sale was entered into.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.