**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Jerry M. HARDIN, Defendant-Appellant.**

**No. WD32132.**

Missouri Court of Appeals,
Western District.

Jan. 26, 1982.

Willard B. Bunch, John Edward Cash, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, J.

DIXON, Judge.

Defendant appeals from a judgment declaring him guilty pursuant to a jury verdict of stealing more than $150, § 570.030 RSMo 1978, and affixing punishment at nine months confinement in the county jail and payment of a $500 fine.

The dispositive issue is the sufficiency of the evidence to support the charge.

In reviewing a challenge to the sufficiency of the evidence to support a guilty verdict, the facts in evidence and all reasonable inferences which may be drawn therefrom must be considered in the light most favorable to the state, disregarding all evidence and inferences to the contrary. *State v. Franco,* 544 S.W.2d 533, 534 (Mo.banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Neal,* 610 S.W.2d 358, 359 (Mo.App.1980). The following statement of facts conforms to that direction.

In April 1979, Mr. and Mrs. Paul Cridlebaugh entered into an agreement with defendant to purchase from him a 1977 Kenworth truck for $30,000. A check for $12,000, dated April 11, 1979, and signed by Mrs. Cridlebaugh, was delivered to defendant. A second check, dated April 20, 1979, and in the amount of $4,000 was also delivered to defendant. It is undisputed that the amounts were charged to the Cridlebaugh's account and credited to defendant's account.

Delivery of the two checks was made to obtain release of title to the truck, which was then being leased by defendant to Milton Truck Lines and being driven by Steven Reed, an employee of defendant. Mrs. Cridlebaugh was unable to recall when they "picked the truck up" in Kansas City, but Mr. Cridlebaugh estimated that they did not get delivery of it for thirty days or six weeks after delivery of the second check.

Although the Cridlebaughs obtained possession of the truck, they never received a title. After several discussions with defendant concerning his title, the Cridlebaughs met with defendant at his home on May 9, at which time defendant gave them a check for $16,000. The check was to be a refund of the two payments made by the Cridlebaughs, and the truck was to be returned to defendant. Mr. Cridlebaugh testified that defendant requested them "to hold the check a day or two" before presenting it for deposit.

The Cridlebaughs placed the $16,000 check with their bank for direct collection,

but it was returned unpaid because of a stop payment order signed by defendant and dated May 16, 1979. The account on which defendant drew the check had a balance of $155.49 on May 9 and a balance of $23.22 on May 16. The Cridlebaughs kept the truck for several months at an undisclosed location. The truck was eventually repossessed by White Motor Company in December, 1979. The Cridlebaughs admitted removing items from the truck, tires, and other equipment valued by them at $2,550.00.

The Cridlebaughs have recovered a civil judgment against the defendant in the amount of $27,000.

It is important to note that the information does not charge deceit in the original transaction. The information in relevant part is as follows:

"defendant appropriated the sum of Sixteen Thousand Dollars ($16,000) of lawful money of the United States, which said property was owned by Paul A. Cridlebaugh and Betty Cridlebaugh, his wife, and defendant appropriated such property from Paul A. Cridlebaugh and Betty Cridlebaugh, his wife, with the purpose to deprive them thereof by deceit by delivering to them a check or order for payment of money in the sum of Sixteen Thousand Dollars drawn upon the Bank of Osborn to repay to the said Paul A. Cridlebaugh and Betty Cridlebaugh, his wife, sums of money paid by them to the said defendant and at the time of delivering said check or draft for the order of payment of money in the amount of Sixteen Thousand Dollars, defendant knew and intended to and did stop payment on said draft, but that the victims relied upon said draft as repayment of monies due them and were thus defrauded and deceived."

Defendant does not challenge the sufficiency of the evidence to show that he intended to stop payment of the check when he delivered it to the Cridlebaughs. Defendant's assignment of error is that the evidence of delivery of the check with the intent to stop payment thereon to the Cridlebaughs on May 9 did not amount to an "appropriation" such as would support criminal prosecution under the statute. It is argued that the money in issue had already been obtained by the deposit in April of the two checks from the Cridlebaughs, and that defendant's delivery of the check did not prevent return of the funds to the Cridlebaughs, since they had no ability at that time to obtain an immediate refund of those funds, only a right to sue for the money.

■ Defendant challenged the sufficiency of the evidence by motions for acquittal at the close of the state's evidence and at the close of all the evidence, but failed to properly preserve the point for review by failing to raise the issue in his motion for new trial. Nevertheless, where a judgment is wholly unsupported by the evidence, review for plain error within the intendment of Rule 29.12(b) is appropriate. *State v. Inman*, 578 S.W.2d 336, 337 (Mo.App.1979); *State v. Maddox*, 549 S.W.2d 931, 932 (Mo. App.1977).

Under § 570.030 of the new Criminal Code (effective 1/1/79), an individual is guilty of stealing "if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." The comments to § 570.030 enumerate the elements of the offense as (1) an appropriation (2) of property or services (3) of another (4) with the purpose to deprive the other thereof, accomplished (5) either without the other's consent or by means of deceit [as submitted in the present case] or by means of coercion. Section 570.010(3) states that " 'Appropriation' means to take, obtain, use, transfer, conceal or retain possession of." The comment to § 570.010(3) states that the definition of "appropriate" is based on the definition of "exercising dominion" in § 560.156, RSMo 1969, which defined stealing as "to appropriate by exercising dominion over property in a manner inconsistent with the right of the owner, either by tak-

ing, obtaining, using, transferring, concealing or retaining possession of his property."

Defendant's delivery of the check with the intent to stop payment thereon did not affect a transfer of the money: Defendant had already obtained those funds as a result of the agreement with the Cridlebaughs for the sale of the truck, and he was not charged with having appropriated the money by obtaining the checks from the Cridlebaughs under false representations that he would deliver title to the truck. See *State v. Basham*, 571 S.W.2d 130 (Mo.App.1978); *State v. Basham*, 568 S.W.2d 518 (Mo.banc 1978).

The sole charge, and the state's argument, is that an appropriation occurred when defendant "retained possession" of the $16,000 already received by delivering the check and stopping payment on it. The state is driven to this position because there was no "taking" when the defendant's $16,000 check was delivered.

■ The issue in the present case then is whether by the issuance of the $16,000 check, assuming a present intent to stop payment, the defendant "retained" possession of the Cridlebaughs' money in the sense that § 570.010(3) makes such a "retention" criminal behavior. The language "retain possession of" in § 570.010(3) speaks to the traditional embezzlement or fraudulent conversion charge where an agent, bailee, fiduciary, or other person entrusted with possession of the property subsequently appropriates or converts such property to his own use with the intent to permanently deprive the owner thereof.

■ The breach of a contractual duty does not amount to embezzlement or larceny by false pretenses. *People v. Yannett*, 49 N.Y.2d 296, 425 N.Y.S.2d 300, 401 N.E.2d 410 (1980); *People v. Churchill*, 47 N.Y.2d 151, 417 N.Y.S.2d 221, 390 N.E.2d 1146, 1149 (1979); 3 Wharton's Criminal Law, § 400, p. 415 (14th ed.). Concomitantly, when the course of dealings between two parties gives rise to a debtor-creditor relationship,

the failure of the debtor to account to his creditor is insufficient to support criminal prosecution. *State v. McCaskill*, 47 N.C. App. 289, 267 S.E.2d 331, 333 (1980); *People v. Treat*, 568 P.2d 473, 477 (Colo.banc 1977); *State v. Compton*, 450 P.2d 79, 81 (Idaho 1969); *Kelley v. People*, 157 Colo. 417, 402 P.2d 934, 936 (1965); *State v. Polzin*, 197 Wash. 612, 85 P.2d 1057, 1060 (1939).

The evidence is undisputed showing an agreement between the parties for the purchase of the truck by the Cridlebaughs, and the delivery by the Cridlebaughs in April of the two checks as a down payment on the truck. The parties stood as vendor and purchaser at that time. Following controversy over the inability to convey title and complaints of mechanical difficulties with the truck, the evidence indicates that on May 9 the parties attempted a recission of their agreement by defendant delivering the $16,000 check in exchange for the Cridlebaughs' promise to return the truck. Attempts to predicate criminal liability on similar facts have been rebuffed by the courts.

In *State v. Waters*, 302 S.W.2d 34 (Mo. 1957), a written contract was entered into between the defendant as vendor and the complaining witnesses as purchasers. The defendant agreed to sell and the complaining witnesses agreed to purchase a house under construction. A check for $3,000 was delivered to the defendant upon the signing of the contract, and he deposited the proceeds in a "building fund." The defendant subsequently failed to perform under the contract and failed to return the $3,000. *Id.* at 36.

The defendant's conviction for embezzlement under former § 560.250 RSMo 1949, was reversed, the court holding that under the statute, the defendant must have been shown to have stood in a fiduciary relationship to the complaining parties and must have been shown to have received the money in that capacity. *Id.* at 37. The court held that the evidence showed instead that the defendant and complaining witnesses

stood in the relationship of vendor and purchaser, so that upon the defendant's failure to comply with the contract, he was no more than a debtor. The court reached a similar result in *State v. Brown*, 171 Mo. 477, 71 S.W. 1031 (1903).

It is not charged or argued that defendant's deposit of the Cridlebaughs' checks constituted an unlawful appropriation. Upon delivery of the two checks by the Cridlebaughs pursuant to the agreement, defendant acquired a legal interest in those proceeds; thereafter, the parties stood as debtor and creditor. Even borrowed money is still the borrower's own money.

■ Issuance of the check by defendant did not constitute an immediate assignment of funds from his account to the Cridlebaughs. *Morris Plan Co. v. Broadway National Bank*, 598 S.W.2d 557, 558 (Mo.App. 1980); *Leavitt v. Charles R. Hearn, Inc.*, 19 Ill.App.3d 980, 312 N.E.2d 806, 809 (1974); § 400.3–409(1) RSMo 1978. A check executed and delivered is merely a promise to pay by which the drawer contracts with the payee that upon presentation the bank will pay to the latter or his order the amount designated. *Mason v. Blayton*, 119 Ga.App. 203, 166 S.E.2d 601, 603 (1969). Defendant, the drawer of the check, had the right, at any time prior to acceptance by the bank, to stop payment on the check. § 400.4–403. Stopping payment on the check did not obviate defendant's liability for the indebtedness [*Martin v. Ficklin*, 240 Mo.App. 1225, 227 S.W.2d 69, 76 (1950); *Di Franco v. Steinbaum*, 191 Mo.App. 516, 177 S.W.2d 697, 701 (1944)].

■ The instant case is similar to *State v. Hurley*, 234 S.W. 820 (Mo.1921). There the evidence showed that the defendant lawfully came into possession of stock certificates under the terms of a written agreement with the owner, and the defendant retained possession of the certificates with the purpose to deliver them when his unliquidated claims against the owner were satisfied. *Id.* at 824. A conviction for embezzlement was reversed. The defendant's conduct did not amount to a conversion which would support a criminal charge. *Id.* The *Hurley* opinion cited with approval the Missouri Supreme Court's declaration in *State v. Britt*, 278 Mo. 510, 213 S.W. 425, 427 (1919) that "there must be some evidence in the case ... to show when and how the accused ceased to be a borrower and became an embezzler." The warning of the *Britt* opinion of the chances for mischief which would result if the criminal law were allowed to be "used as an oppressive agent to enforce debatable civil rights through fear of prosecution ..." seems apt in the instant case. "The criminal courts are neither a collection agency nor a forum for the trial of mere disputes over the ownership of property." *State v. Claybaugh*, 138 Mo.App. 360, 122 S.W. 319, 321 (1909), cited with approval in *State v. Hurley, supra* at 824.

The state's brief cites and relies upon *State v. Newhart*, 503 S.W.2d 62 (Mo.App. 1973), and *State v. Newhart*, 539 S.W.2d 486 (Mo.App.1976), (second direct appeal, following retrial) as indistinguishable from, and dispositive of, the present appeal.

In *Newhart*, the purchaser of real estate delivered a check for $14,400, payable to the sellers and representing the balance of the purchase price, to the defendant, an attorney representing the sellers. The defendant delivered to his clients a check for nearly $8,000, representing their equity in the property and agreed to deliver for the sellers the balance of the purchaser's payment to pay off a note held by the Veteran's Administration which was secured by a deed of trust on the real estate. *Id.* at 487. The defendant failed to pay the note, and bank records showed a deposit to the defendant's own account of a sum roughly equal to the amount he was to have applied to the note. *Id.* at 488–89.

*Newhart* is factually distinguishable, for there the offense was charged upon the basis of the original acquisition. It is also legally distinguishable since Newhart re-

tained the money which belonged to the sellers, his clients, with whom Newhart had a confidential relationship. No such relationship exists in the instant case.

The judgment of conviction is reversed.

All concur.