STATE of Missouri, Respondent,

v.

Billy J. MORRIS, Appellant.

No. WD 36068.

Missouri Court of Appeals, Western District.

Aug. 6, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 1, 1985.

Application to Transfer Denied Nov. 21, 1985.

L.R. Magee, Hines & Magee, Kansas City, for appellant.

William L. Webster, Atty. Gen., T. Chad Farris, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

BERREY, Presiding Judge.

The defendant, Billy J. Morris, was convicted by jury of stealing in violation of § 570.030, RSMo, and sentenced to ninety (90) days in the county jail and fined. After overruling post-trial motion, the judge imposed the sentence and fined the defendant $100.00. Defendant appeals.

Judgment reversed.

The following are the facts of the case construed most favorably to the state and giving the state the benefit of all favorable inferences. *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

The complaining witness, Ronald E. Soldani, is a U.S. Air Force Captain stationed at Whiteman Air Force Base and connected with security at the base. He testified that he purchased a 1975 pick-up truck by putting a deposit on the truck on November 4, 1983, and picked it up on November 11, 1983, from Ralph Silvas in Kansas City. Before Soldani picked up the truck he called BJ Transmission in LaMonte and described what he thought was wrong with the transmission, "and he told me that it sounded like it needed to be rebuilt or replaced...." At that time the odometer read 93,821 miles. He drove the truck from Kansas City to defendant's shop at LaMonte where defendant test drove the pick-up with Captain Soldani as his passenger. According to Soldani, defendant stated he thought the bands in the transmission were worn out causing slippage and it needed to be rebuilt or replaced. According to Captain Soldani, "It was left

up in the air basically until he got it out of the truck and determined what repairs it would need." The defendant made repairs to the transmission and Soldani picked up the truck on November 14 and paid for the work. The parties agreed upon a price of $225.00 and the final bill for repairs came to $262.81 which included a new vacuum modulator and new transmission fluid. Soldani paid for these repairs. Apparently the work was unsatisfactory and Soldani later complained and after some discussion Soldani stated Morris agreed to take out the transmission and put in one of his transmissions.

Soldani testified he went to a vocational technical school and worked around garages in his youth. In his opinion, after viewing the exterior of the transmission, no work had been performed and he claimed the truck was not driving any better than when he took it to defendant's garage. He called defendant and defendant offered to replace the transmission. Soldani acknowledged that there was a ninety day warranty on the work and that he did not avail himself of this ninety day warranty. The following exchange between defendant's attorney and Soldani typifies the entire proceeding:

Q. Captain, did Mr. Morris guarantee his work to you?

A. Yes, he did.

. . . .

Q. What was done wrong?

A. I was charged for a service that was not rendered and payment was solicited and there were no services performed that I could tell.

Q. And then the person who you said did that offered to replace your transmission; isn't that right?

A. Yes, sir.

. . . .

Q. You were offered the money back that you didn't accept?

A. That's right, sir.

Q. You were offered to replace the transmission and you didn't accept?

A. Not from someone who charged me for something that he didn't do. I didn't know what he would do to it. No, sir, I didn't.

....

Q. That was to get your money back, you called the Prosecuting Attorney to get your money back?

A. Yes, sir.

Q. To get evidence like that, for what purpose, Captain?

A. To try and recover my money.

Q. That is what you are telling these people this whole process is about? You sued him to get your money back, didn't you.?

A. Yes, sir.

Q. Are you telling these people with a degree in criminal justice that you get your money back by going to the Prosecuting Attorney and making these complaints?

A. Yes, sir.

....

Q. Did you ask him to do anything about the repair problem that you were having?

A. Yes, I did. I asked to get my money back for the transmission overhaul and the labor that was supposedly used to take the transmission out and put it back in.

Q. What did the Defendant do when you asked for that?

A. First, he refused entirely, made the comment that I was trying to get something for nothing. The he asked me, "Well, how much money did I want back? And I told him that since I couldn't prove tht he didn't put the new vacuum modulator on, I just wanted the $225.00 back that he had quoted me for rebuilding the transmission and taking it out and putting it back in.

....

Q. Did he ever offer to look at your pickup again or do anything else to it?

A. Yes, he did.

Q. What did he tell you he would do?

A. He said he would take that transmission out and put one of his transmissions in.

Garry Wolfe, supervisor of the Auto Hobby Shop at Whiteman Air Force Base testified that in his opinion the pan gasket and modulator valve had been replaced but the transmission had not been removed.

Forest Allen, manager of General Transmission of Sedalia, also testified that the transmission had not been removed.

Pettis County Deputy Sheriff John Snyder testified Soldani complained to him on December 6, 1983, about faulty repairs. He investigated and turned his report over to the prosecuting attorney. Snyder contacted the defendant who made no statement about the incident. The deputy was never advised by anyone, including the Captain, that defendant had offered to replace the transmission.

In his own defense the defendant testified that he has been in business twenty-seven years rebuilding transmissions and that every transmission he works on has a ninety day unconditional guarantee. The guarantee is written on every ticket and he advertises a ninety day warranty. Defendant acknowledged working on the transmission in Soldani's pick-up truck. Morris testified he "pulled it," put in clutches, new seals, and a new sprag.

■ The defendant challenged the sufficiency of the evidence in his motions for acquittal at the close of the state's evidence and at the close of all the evidence. Under § 570.030 of the criminal code (effective January 1, 1979) an individual is guilty of stealing, "if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." The facts before us demonstrate there was no evidence of criminal intent to commit a fraud upon Captain Soldani. There is no room for any reasonable mind to infer the defendant had a criminal intent to defraud the Captain. There is no showing the defendant appropriated the property or services of Soldani with the intent to deprive

him thereof. The uncontroverted evidence is that defendant gave a ninety day warranty on his work and offered to perform under the warranty. The offer was refused.

The court in *State v. Hardin*, 627 S.W.2d 908, 910–911 (Mo.App.1982), noted:

> The comments to § 570.030 enumerate the elements of the offense as (1) an appropriation (2) of property or services (3) of another (4) with the purpose to deprive the other thereof, accomplished (5) either without the other's consent or by means of deceit [as submitted in the present case] or by means of coercion. Section 570.010(3) states that " 'Appropriation' mean to take, obtain, use, transfer, conceal or retain possession of." The comment to § 70.010(3) states that the definition of "appropriate" is based on the definition of "exercising dominion" in § 560.156, RSMo 1969, which defined stealing as "to appropriate by exercising dominion over property in a manner inconsistent with the right of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property."

The defendant made the repairs, warranted his work, and was paid for the work. The witness complains the work was not satisfactory and the defendant committed a criminal fraud. There is no dispute that defendant offered to (a) give complaining witness his money back or (b) honor the warranty and that the complaining witness refused these offers. As the court in *Hardin, supra* at 911, noted "[t]he breach of a contractual duty does not amount to embezzlement or larceny by false pretenses." Reviewing the sufficiency of the evidence as plain error there is no element of criminal intent present.

■ The complaining witness had no right to invoke criminal process on account of the trouble and expense a civil suit might cause him. "The criminal courts are neither a collection agency nor a forum for the trial of mere disputes over the ownership of property." *State v. Claybaugh*, 138 Mo.App. 360, 122 S.W. 319, 321 (1909).

When the transaction between defendant and complaining witness gives rise to a debtor/creditor relationship the failure of the debtor to account to his creditor is insufficient to support criminal prosecution.

In *State v. Waters*, 302 S.W.2d 34 (Mo. 1957), the defendant's conviction of embezzlement was reversed. There the defendant agreed to sell and the complaining witness agreed to buy a house under construction. The complaining witness gave the defendant $3,000.00 as a deposit when the contract was signed and the defendant deposited this into a "building fund." Subsequently, defendant failed to either perform under the contract or return the $3,000.00. The court held defendant was not shown to have stood in a fiduciary relationship to complaining witness nor to have received the money in that capacity.

The evidence there as here showed defendant and complaining witness stood as vendor and purchasor and upon defendant's failure to perform he was no more than a debtor. A similar result is found in *State v. Brown*, 171 Mo. 477, 71 S.W. 1031 (1903).

■ In *State v. Neal*, 680 S.W.2d 310 (Mo.App.1984), the defendant was convicted of stealing $700.00 by deceit from an undercover highway patrolman by representing he would return with cocaine in exchange for the money and in failing to return with either. The breach of a contractual duty (to correctly repair the transmission) does not amount to larceny by false pretense. *State v. Neal, supra* at 313, citing *State v. Hardin, supra*.

Accepting the complaining witness's statement as true, the most that can be made from the evidence is that defendant's workmanship was faulty or negligently performed. The evidence is not sufficient to show the criminal intent necessary to support the crime charged. *State v. Basham*, 568 S.W.2d 518 (Mo. banc 1978), and *State v. Basham*, 571 S.W.2d 130 (Mo.App. 1978). "[T]he State must establish that the defendant had the intent to cheat or de-

fraud at the time the false representations were made to cause the victim to part with his property. [Citation omitted.] Otherwise, there is no element of deceit or fraud, and the defendant, upon non-performance would be guilty of no more than breach of contract, not subject to criminal sanction." *Basham II*, at 132.

Judgment reversed and defendant is ordered discharged.

All concur.