STATE of Missouri, Appellant,

v.

Don Fletcher REED, Respondent.

No. 55069.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 10, 1991.

Robert P. McCulloch, Pros. Atty., Michael J. Smith, Asst. Pros. Atty., Clayton, for appellant.

Arthur S. Margulis, David R. Crosby, Margulis & Grant, Clayton, for respondent.

AHRENS, Justice.

The State of Missouri (state) appeals from the dismissal of an indictment charging defendant, Don Fletcher Reed, with

stealing $150.00 or more by deceit in violation of § 570.030 RSMo 1986. We affirm.

As a preliminary matter, it is necessary to review the procedural history of the case. The trial court first denied defendant's pre-trial motion to dismiss the indictment, and the case was tried to a jury. The trial court then denied defendant's motions for judgment of acquittal at the close of the state's case and at the close of all the evidence; the court declared a mistrial when the jury was unable to reach a verdict. Thereafter, the court entered an order discharging the jury and sustaining defendant's pre-trial motion to dismiss.

On appeal by the state, this court remanded and directed the trial court to specify the basis of its ruling and designate what record, if any, it considered in making its ruling. *State v. Reed*, 770 S.W.2d 517, 521 (Mo.App.1989). The trial court on October 31, 1989, entered its order complying with the mandate of this court. The court stated that it had sustained defendant's pre-trial motion to dismiss on the basis of *State v. Grainger*, 721 S.W.2d 237 (Mo. App.1986), after considering the indictment, written memoranda pertaining to the motion, the parties' oral arguments, and the acknowledgment by the state in its stipulated evidence [1] on the motion to dismiss that at the time of the offense charged in the indictment no funds or money changed hands, but, rather, a debt or loan was simply renewed under different terms. The court specifically stated that in ruling on the motion to dismiss it did not consider the evidence adduced at trial. In determining that the *Grainger* case barred prosecution for the alleged fraudulent renewal of the loan, the court stated that its ruling on defendant's motion to dismiss was not a ruling on a post-trial motion for judgment of acquittal pursuant to Rule 27.-07(c).

Because the trial court in dismissing the indictment relied on evidence extrinsic to the indictment itself, its ruling is appealable, if at all, under § 547.200.2 RSMo

1986, as long as the possible outcome of such appeal would not place defendant in double jeopardy. *Reed*, 770 S.W.2d at 520. Provided the trial court did not determine the question of defendant's guilt, jeopardy did not attach in the first instance, and the potential outcome of a subsequent appeal would not result in double jeopardy for defendant. *Id.* On the record before us, we find no evidence that the trial court made a determination of defendant's guilt. We find no bar to the state's appeal.

According to the parties' stipulated evidence for purposes of defendant's motion to dismiss, the following facts gave rise to the indictment. Defendant, Don Reed, was the principal owner and president of Don Reed Chevrolet, Inc. (dealership). Defendant set up a company, Automark, Inc., to purchase used cars taken in trade by the dealership. The cars were retained for retail sale on the dealership's lot. Once a buyer was found for one of the cars, the dealership would then purchase the car back from Automark for the same price Automark originally paid to the dealership for the car.

Outside funds were solicited to finance Automark's operation. On July 7, 1982, Daniel Vollmer loaned Automark $100,-000.00, accepting a new car in trade for his used one. Vollmer received a promissory note, payable within one year with a 16% rate of interest. The note granted Vollmer a security interest in all assets of Automark, Inc., "including but not limited to the inventory of used automobiles."

Automark transferred to the dealership essentially all of the funds solicited, including Vollmer's; however, no titles to the used cars were ever transferred. Defendant was aware that no titles were transferred and that Automark's creditors had been told their loans were secured by an inventory of used cars.

When Vollmer's first promissory note matured on July 7, 1983, he and Automark negotiated a second note for a principal of $110,000.00, payable within one year. The

---

**1.** As noted in the first appeal, the "stipulation" of the evidence was not a set of stipulated facts; rather, it consisted of what each party believed its evidence to be. *State v. Reed*, 770 S.W.2d 517, 518 n. 1 (Mo.App.1989).

interest rate remained the same, and Vollmer again traded in a used car for a new one; $10,000.00 of the note's principal consisted of interest on the first note. The note again pledged as security all assets of Automark, including its inventory of used cars. On November 8, 1983, defendant obtained a small business loan for the dealership from Landmark Bank, pledging as security the same inventory of used cars used to secure the Automark loans.

Vollmer's second promissory note matured on July 7, 1984. Vollmer and defendant agreed to renew the note in the principal amount of $110,000.00, but at a lower interest rate. Vollmer again traded in a used car for a new one, and the new promissory note (third) again pledged as security the same inventory of used cars used to secure both the prior Automark loans and defendant's loan from Landmark Bank. Later in 1984, Landmark Bank closed the dealership after the dealership defaulted on existing loans. The bank seized the titles to all used cars before Automark paid any principal on Vollmer's loan; Automark had no assets to secure the note.

The transaction resulting in the third promissory note formed the basis of defendant's indictment:

The Grand Jurors of the County of St. Louis, State of Missouri, charges [sic] that the defendant[,] in violation of Section 570.030, RSMo, acting with others, committed the class C felony of stealing, punishable upon conviction under Sections 558.011.1(3) and 560.011, RSMo, in that on or about July 7, 1984, at 12110 Lusher Rd., in the County of St. Louis, State of Missouri, the defendant appropriated $110,000.00 in funds, of a value of at least one hundred fifty dollars, which said property was in the possession of Daniel Vollmer, and defendant appropriated such property from Daniel Vollmer, and with the purpose to deprive him there of [sic] by deceit, to-wit: in that defendant, acting with others, purposely represented to Daniel Vollmer that should Automark, Inc., be allowed to retain his investment of $110,000.00 for another year[,] that the investment

would be secured by an inventory of used cars, and defendant knew this representation to be false when it was made and Daniel Vollmer relied upon this representation in allowing Automark, Inc., to retain his investment.

In its brief on appeal, the state contends the trial court erred in dismissing the indictment, and urges us to distinguish or decline to follow *Grainger.*

██ "The test of the sufficiency of an indictment is whether it contains all essential statutory elements of the offense and whether it clearly apprises the defendant of the facts constituting the offense." *State v. S.E.,* 675 S.W.2d 86 (Mo.App.1984). Under § 570.030.1 RSMo 1986, the elements of stealing are (1) an appropriation (2) of property or services (3) of another (4) with the purpose to deprive the other thereof, accomplished (5) either without the other's consent or by deceit or coercion. *State v. Hardin,* 627 S.W.2d 908, 910 (Mo.App. 1982). For purposes of the statute, "appropriate" means to take, obtain, use, transfer, conceal, or retain possession of property of value. Section 570.010(2) RSMo 1986; *State v. David,* 687 S.W.2d 571, 572 (Mo. App.1984). At issue here is whether defendant "appropriated" money or property of value in renewing a promissory note for $110,000.00, while falsely representing to the holder of the note that it would continue to be secured by an inventory of used cars.

We find no "appropriation" on these facts. Defendant obtained no money or property on July 7, 1984. Rather, he obtained a renewal of a loan on different terms. "Having a loan renewed simply does not vest property or money in the defendant." *Grainger,* 721 S.W.2d at 238. Although the state argues that the lowered interest rate embodied in the promissory note constituted money or property of value that the defendant appropriated, we view the changed interest rate as merely a different term negotiated at the time of the loan renewal.

Similarly, we find that defendant appropriated no property by retaining possession of the money Vollmer loaned once the loan

was renewed. The language "retain possession of" in § 570.010(2) "speaks to the traditional embezzlement or fraudulent conversion charge where an agent, bailee, fiduciary, or other person entrusted with possession of property subsequently appropriates or converts such property to his own use with the intent to permanently deprive the owner thereof." *Hardin*, 627 S.W.2d at 911; *David*, 687 S.W.2d at 572. On this record, we find no evidence of a fiduciary relationship between Vollmer and defendant; rather, defendant was Vollmer's debtor. "[W]hen the course of dealings between two parties gives rise to a debtor-creditor relationship, the failure of the debtor to account to his creditor is insufficient to support criminal prosecution." *Hardin*, 627 S.W.2d at 911. Once the initial loan was made, the principal was defendant's to use as he wished[2]; therefore, defendant cannot be said to have retained Vollmer's property upon renewal of the loan. *See Grainger*, 721 S.W.2d at 239. This result is not altered by the fact that the loan was secured, since defendant was charged with appropriation of the loan's principal, not its security.

The state argues that *Grainger* is logically and legally flawed in ignoring the "economic reality" that the right to receive payment of the corpus on the due date of a loan is intangible property capable of being taken, kept, and retained. While we find some merit in this argument, we are not prepared to hastily abandon the precedent of *Grainger* and *Hardin* and venture into the province of the legislature by criminalizing conduct that we deem a particular statute to, at best, only marginally contemplate. In making this observation, we note that defendant in oral argument before this court effectively admitted defrauding a secured creditor, in violation of § 570.180 RSMo 1986. Defendant's conduct is not, however, proscribed by § 570.030, and the trial court properly dismissed the indictment charging defendant under that statute.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J. concur.

---

2. On this point, we note appellant's acknowledgment in its stipulated evidence for purposes of defendant's motion to dismiss. Appellant concedes that upon Automark's solicitation of funds for the purchase of used cars from defendant's dealership, the dealership "would then be able to use the money from Automark to settle its current obligations...."