

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | WD81687 |
| v. | ) | |
| | ) | |
| GILBERT GARCIA, | ) | FILED: September 24, 2019 |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF LIVINGSTON COUNTY
### THE HONORABLE THOMAS N. CHAPMAN, JUDGE

### BEFORE DIVISION TWO: LISA WHITE HARDWICK, PRESIDING JUDGE, THOMAS H. NEWTON AND MARK D. PFEIFFER, JUDGES.

Gilbert Garcia appeals from his conviction for receiving stolen property. He contends the evidence was insufficient to support the conviction, the verdict director erroneously allowed a non-unanimous verdict, and the evidence was insufficient to support the restitution order. For reasons explained herein, we affirm Garcia's conviction but modify the judgment to order restitution in the amount of $5,347.25.[1]

### FACTUAL AND PROCEDURAL HISTORY

On September 22, 2016, Joseph Marshall ("Marshall") and his wife, Shawna Marshall, (collectively, "the Marshalls") entered into a contract for deed with Garcia on a home in Chillicothe that the Marshalls had owned for approximately seventeen years.

---

[1] Judge Thomas N. Chapman, who is currently a member of this court, presided over Garcia's trial and sentencing during his prior service as a circuit judge in the 43rd Judicial Circuit. Judge Chapman did not participate in the consideration or decision of this appeal.

The contract provided that Garcia would pay the sale price of $15,000, plus interest, taxes, and insurance in monthly installments over five years. Included in the contract was a provision that called for Marshall to provide up to $5,000 to Garcia "for materials to be used at the property," with Garcia providing all labor on the property. The contract provided that Garcia could purchase the materials at Lowe's Home Improvement ("Lowe's") by calling Marshall "with a list of material[s] at the commercial account check out." The amount set aside for materials was a negotiated amount that was factored into the total contract price. The Marshalls allowed Garcia to move into the house with no money down. Marshall also added Garcia as an authorized user on his Lowe's charge account to purchase the $5,000 in materials.

The day after the contract was signed, Garcia began making purchases at Lowe's on Marshall's account without calling Marshall. Marshall's October 2, 2016 statement for his Lowe's charge account indicated that Garcia made $1,137.95 in purchases purportedly for the property from September 23 to September 28, 2016. The invoice showed, however, that some of these purchases were for items such as food, drinks, children's toys, tools, and batteries, which Marshall did not believe met the contract's requirement that the purchases be materials for the property. Marshall removed Garcia's authorization to charge on his Lowe's account. Marshall then spoke to Garcia. Garcia apologized and told Marshall that he just "needed those things." Marshall told Garcia that the purchases made under the contract had to be for building materials. After this conversation, Marshall reauthorized Garcia to make purchases on his Lowe's account because he believed that Garcia understood that the purchases had to be for "materials only on that house, just like the contract says."

When Marshall received his November 2, 2016 statement from Lowe's, he saw that Garcia had made an additional $10,205.91 in purchases purportedly for the property from October 4 to October 31, 2016. These purchases included food, drinks, restaurant gift cards, children's toys, and tools. After he received this statement, Marshall canceled Garcia's authorization to charge on his account at Lowe's. Marshall asked Garcia to bring the property that he had purchased from Lowe's to him. Although Garcia said that he would do so, he did not.

Marshall contacted the police on November 30, 2016. The police investigation found that Garcia had pawned for cash some of the items he purchased on Marshall's Lowe's account. Specifically, the investigation showed that, on September 28, 2016, just six days after the contract was signed, Garcia purchased a power lithium tool set for $122.92 and another large tool set for $122.55 on Marshall's Lowe's account and pawned them the next day at a Chillicothe pawn shop for $80 total. Additionally, Garcia purchased a power wormdrive saw for $189.05 and an air compressor for $189.05 on Marshall's Lowe's account on October 7, 2016, and pawned them that same day for $60 and $90, respectively.

Marshall never recovered any of the property that Garcia had purchased on the Lowe's account. Moreover, although Garcia had purchased a new stove, refrigerator, and microwave on Marshall's account, those appliances were never installed in the house. Instead, Garcia had installed "old junkie" appliances. The only purchases of Garcia's on Marshall's Lowe's account that were actually in the house were some cabinets and doors that were so poorly installed that they were ruined. A police officer who inspected the property testified that the house was "trashed." Marshall was

3

responsible for paying the charges for the purchases that Garcia made on the Lowe's account, and Garcia never repaid Marshall.

The State charged Garcia as a prior offender with one count of the class C felony of receiving stolen property with a value of at least $500. A jury trial was held. The jury found Garcia guilty. The court sentenced him to five years in prison, subject to a 120-day callback, and ordered him to pay $6,407.22 in restitution. Garcia appeals.

**ANALYSIS**

In Points I and II, Garcia contests the sufficiency of the evidence to support his conviction for receiving stolen property. Our review of a challenge to the sufficiency of the evidence to support a conviction is "limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Naylor*, 510 S.W.3d 855, 859 (Mo. banc 2017) (citation omitted). "This is not an assessment of whether this [c]ourt believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted). We do not reweigh the evidence but, instead, accept as true all evidence and inferences supporting guilt and ignore all contrary evidence and inferences. *Id.* at 858-59. We recognize that the jury "may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (citation omitted).

4

Section 570.080.1, RSMo Supp. 2014,[2] provides that "[a] person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he or she receives, retains, or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." "'Receiving' means acquiring possession, control or title or lending on the security of the property." § 570.010(13). "'Deprive' means, in pertinent part, "[t]o withhold property from the owner permanently" or "[t]o use or dispose of property in a manner that makes recovery of the property by the owner unlikely." § 570.010(8).

The State charged that Garcia committed the class C felony of receiving stolen property in that "on or about November 30, 2016, . . . the defendant with the purpose to deprive the owner of $6,407.22 of miscellaneous items, retained such property knowing that it had been stolen and the property appropriated was of the value of at least" $500. The State's theory was that the property Garcia purchased in excess of the contract's $5,000 limit was stolen property, and when he refused to give the property to Marshall, he deprived Marshall, the rightful owner, of Marshall's lawful interest in the property.

To convict Garcia of receiving stolen property under Section 570.080, the State had to establish that he:  (1) retained the property that was stolen; (2) exercised dominion over the property by retaining it; (3) knew or believed that the property was stolen; and (4) intended to deprive the owner, Marshall, of a lawful interest in the property.  *State v. Langdon*, 110 S.W.3d 807, 812 (Mo. banc 2003).  Garcia does not contest that the State proved elements (1) and (2), namely, that he retained the property that was stolen and that he exercised dominion over the property by retaining it.

---

[2] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2014 Noncumulative Supplement, unless otherwise indicated.

Indeed, the evidence established that Garcia retained property that was stolen by purchasing over $10,000 in items on Marshall's Lowe's account, more than twice the $5,000 limit that Garcia and the Marshalls had agreed to in the contract. The evidence also established that Garcia exercised dominion over the property by failing to give the property to Marshall upon Marshall's request.

Garcia challenges elements (3) and (4). Specifically, he contends that, because he was authorized to charge on Marshall's Lowe's account, the evidence did not show that he knew or believed that the items he charged in excess of $5,000 were stolen. Moreover, he asserts that, while there was evidence that he breached his contract with Marshall, the evidence did not show that he intended to deprive Marshall of a lawful interest in the items in excess of $5,000 that he purchased.

The elements that Garcia challenges concern his knowledge and his intent. Direct evidence of a defendant's knowledge and intent is not required and may be inferred from the facts and circumstances in evidence. *State v. Gardner*, 741 S.W.2d 1, 9 (Mo. banc 1987); *State. v. Lusher*, 708 S.W.2d 188, 189 (Mo. App. 1986).

The facts and circumstances in evidence were that Garcia entered into a contract with the Marshalls pursuant to which Marshall would provide "up to $5,000 for materials to be used at the property," and Marshall would allow Garcia to charge the $5,000 for materials on his Lowe's account. Marshall's October 2, 2016 statement, his first statement from Lowe's after the contract was signed, showed that Garcia had charged items such as food, drinks, restaurant gift cards, children's toys, tools, and batteries, which the jury could have reasonably inferred were for his personal consumption or use and were not "materials to be used at the property." Also included on that initial

6

statement were two tool sets that Garcia purchased. Even if these tool sets could be considered "materials to be used at the property," Garcia did not use them at the property but, instead, pawned the tool sets for cash the day after he bought them.

After Garcia and Marshall discussed the contractually-unauthorized purchases that appeared in the first statement, Garcia apologized for making those purchases, and the two men agreed that any future purchases were to be for "materials to be used at the property." Garcia, however, continued to make contractually-unauthorized purchases in even greater volume. Marshall's November 1, 2016 statement from Lowe's showed that Garcia charged over $10,000 and again purchased items for his personal use or consumption such as food, drinks, children's toys, and Applebee's gift cards. Garcia also charged two tools that he pawned the same day for cash.

From the evidence that Garcia purchased items on Marshall's account that were clearly for his personal consumption or use and were not materials to be used at the property, even after Marshall reiterated that he was not allowed under the contract to charge such items and Garcia apologized for doing so, and the evidence that Garcia's purchases totaled more than double the contract's $5,000 limit, the jury could reasonably infer that Garcia knew the property was stolen. Moreover, from the evidence that Garcia purchased consumable goods, pawned four items for cash, and did not give any of the property to Marshall upon Marshall's request, the jury could reasonably infer that Garcia intended to deprive Marshall of his lawful interest in the stolen property.[3] The evidence was sufficient to support Garcia's conviction for receiving stolen property. Points I and II are denied.

---

[3] That the record contains substantial evidence of Garcia's criminal intent to deprive Marshall of the property distinguishes this case from State v. Morris, 699 S.W.2d 33 (Mo. App. 1985), the case upon

In Point III, Garcia contends the circuit court erred in submitting the verdict director for receiving stolen property. The verdict director instructed the jury:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 30, 2016, in the County of Livingston, State of Missouri, the defendant retained $6,407.22 of miscellaneous items, and

Second, that the miscellaneous items was [sic] the property of another, and

Third, that at the time defendant retained this property, he knew it had been stolen, and

Fourth, that defendant retained the property for the purpose of using or disposing of it in such a way that made recovery by the owner unlikely and

Fifth, that the property appropriated had a combined value of at least five hundred dollars, then you will find the defendant guilty of receiving stolen property under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "appropriated" means to take, obtain, use, transfer, conceal or retain possession of.

which Garcia primarily relies. In *Morris*, there was no evidence that the defendant intended to deprive the victim of his property and, therefore, committed the crime of stealing, when the defendant performed what the victim deemed to be unsatisfactory repairs on the victim's car. *Id.* at 34-35. Because there was no evidence of criminal intent, this court held that the case was simply a breach of contract matter and not a criminal matter. *Id.* at 36-37. In this case, Garcia's actions of purchasing goods for personal consumption that were clearly not materials to be used on the property, pawning items for cash, and refusing to give the items to Marshall upon request demonstrated Garcia's criminal intent to deprive Marshall of the stolen property.

Garcia argues that this instruction was erroneous because it failed to specify a list of $6,407.22 worth of miscellaneous items or instruct the jury that it must unanimously agree on the same list of $6,407.22 worth of miscellaneous items to find him guilty. He asserts that, as a result, the verdict director failed to ensure a unanimous jury verdict. Garcia concedes that he failed to object to the verdict director at trial. Therefore, review is for plain error only.

Pursuant to Rule 30.20, this court has discretion to review "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "For instructional error to constitute plain error, the defendant must demonstrate the trial court 'so misdirected or failed to instruct the jury that the error affected the jury's verdict.'" *State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011) (citation omitted).

Article I, section 22(a) of the Missouri Constitution protects the right to a unanimous jury verdict. *Id*. at 155. "For a jury verdict to be unanimous, 'the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt.'" *Id*. (citations omitted). The issue of jury unanimity may be implicated in "multiple acts" cases. *Id*. "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id*. at 155-56.

In *Celis-Garcia*, the Court held that a defendant's right to a unanimous jury verdict was violated when the verdict directors failed to separately identify specific instances of sodomy. *Id*. at 159. The victims in the case identified "at least seven separate acts of statutory sodomy that occurred at different times (some more than

9

three days apart) and in different locations" within the house in which they lived with their mother, who was the defendant, and her boyfriend.  *Id.* at 156.

The Court found that, "[d]espite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted [the defendant] of the same act or acts."  *Id.*  Instead, the verdict directors (one for each victim) allowed the jury to find the defendant guilty of first degree statutory sodomy if the jurors believed "'that between [specified dates] . . . the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals.'"  *Id.*  The Court explained that the verdict directors were erroneous because they allowed a finding of guilt when jurors may not have unanimously agreed on the same specific act of sodomy.  *Id.*  The Court ruled that, in a multiple acts case, the defendant's right to a unanimous verdict could be protected by having either:  (1) the State "elect[ ] the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describ[e] the separate criminal acts presented to the jury and the jury . . .  instructed that it must agree unanimously that at least one of those acts occurred."  *Id.* at 157.

*Celis-Garcia* does not apply in this case, however, because this is not a multiple acts case.  The State charged Garcia with the single offense of retaining stolen property occurring "on or about November 30, 2016."  By charging him in this manner, the act of retaining stolen property on this one date was not divisible into separate offenses. *See Gardner*, 741 S.W.2d at 5.  As the Court noted in *Gardner*:

> While receiving different articles of stolen property, at different times on separate and unconnected occasions, constitutes separate crimes, even where all of the property is afterward found in the possession of the defendant at the same time and place, 66 Am.Jur.2d, Receiving

10

> Stolen Property, 293 at p. 305, by charging a defendant with receiving all
> of the stolen property on one date in an information, the offense is then a
> single act that is not divisible into separate crimes. *Id.*

*Id.* Thus, even though there was evidence that Garcia made several individual purchases that he then retained, the State charged him in a single count with retaining, on one date, all the property that he purchased that exceeded the contract's $5,000 limit. Pursuant to *Gardner* and unlike the acts of statutory sodomy at issue in *Celis-Garcia*, each individual purchase of Garcia's that exceeded the $5,000 limit was not a separate crime. Consequently, the jury was not required to identify each individual piece of property that was stolen to ensure a unanimous verdict. Rather, the jury was required to find only that the aggregate amount of stolen property that Garcia retained on or about November 30, 2016, was at least $500. The circuit court did not err, plainly or otherwise, in submitting the verdict director. Point III is denied.

In Point IV, Garcia contends the court erred in ordering him to pay $6,407.22 in restitution because the evidence was insufficient to support that amount. He concedes that he did not object to the imposition of restitution at the sentencing hearing. Therefore, review is for plain error only. *State v. Heidbrink*, 546 S.W.3d 597, 604 (Mo. App. 2018). "[W]e will reverse when a plain error affecting a substantial right results in manifest injustice or a miscarriage of justice." *Id.*

Under Section 559.105.1, RSMo 2016, "[a]ny person who has been found guilty of or has pled guilty to an offense may be ordered by the court to make restitution to the victim for the victim's losses due to such offense." In interpreting this statute, "[t]he plain and unambiguous meaning of the phrase 'due to' is 'because of.'" *State ex rel. Bowman v. Inman*, 516 S.W.3d 367, 369 (Mo. banc 2017) (quoting WEBSTER'S THIRD NEW INT'L

11

DICTIONARY 699 (2002)).  Thus, to meet the causation requirement necessary to support a restitution order, the evidence must quantify the victim's losses that are *because of* the offense.  *State v. Fleming*, 541 S.W.3d 560, 564 (Mo. App. 2018).

Garcia argues that there was no direct evidence that the losses Marshall sustained were due to or because of the offense.  The court's restitution order was based upon the aggregate total of property charged to Marshall's Lowe's account that exceeded the contract's $5,000 limit.  Garcia did not give any of this property to Marshall upon his request, and Garcia never repaid Marshall for the property.  Moreover, Marshall testified that he was unable to recover any of the property that Garcia charged to the account and that some cabinets and doors found in the house were so poorly installed that they were ruined and unusable.  Marshall testified that he was liable to Lowe's for all of the charges that Garcia made to acquire this property.  The record contained sufficient evidence that the restitution ordered was derived from Marshall's losses due to or because of Garcia's retaining the stolen property.

Lastly, Garcia argues that the evidence does not support the amount of restitution ordered.  The State concedes that the record does not support restitution in the amount of $6,407.22.  Requiring Garcia to pay restitution in an amount that is not supported by the record results in manifest injustice or a miscarriage of justice; therefore, the circuit court plainly erred in ordering him to pay $6,407.22 in restitution.

Unlike Rule 84.14, which applies to civil cases, "Rule 30.23 does not explicitly authorize this Court to render the judgment that the trial court should have entered." *State v. Schnelle*, 398 S.W.3d 37, 48 (Mo. App. 2013).  Rule 30.23 does, however, direct us to "dispose finally of the case." *Id.*  The State concedes that the appropriate

12

amount of restitution is $5,347.25.  Accordingly, to dispose finally of this case, we modify the judgment to order Garcia to pay restitution in the amount of $5,347.25.

**CONCLUSION**

Garcia's conviction is affirmed.  The judgment is modified to order Garcia to pay restitution in the amount of $5,347.25.  The judgment is affirmed in all other respects.

_____
**LISA WHITE HARDWICK, JUDGE**

ALL CONCUR.